1  Eugene Feldman, Esq. SBN 118497
2  genefeldman@mindspring.com
   EUGENE FELDMAN ATTORNEY AT LAW, APC
3  555 Pier Avenue, Ste. 4
4  Hermosa Beach, California 90254
   Tel:   310-372-4636
5  Fax:  310-376-3531

6
7  A. Anderson B. Dogali, Esq.
   *Pro Hac Vice*
8  adogali@forizs-dogali.com
   FORIZS & DOGALI, P.A.
9  4301 Anchor Plaza Parkway, Suite 300
10 Tampa, Florida 33634
   Tel:  813-289-0700
11 Fax:  813-289-9435
12 *Attorneys for Plaintiffs and Class Plaintiffs*

13
14              **UNITED STATES DISTRICT COURT**
15              **CENTRAL DISTRICT OF CALIFORNIA**
                **WESTERN DIVISION**
16

| | |
|---|---|
| 17 CARI SHIELDS, AMBER BOGGS | |
| and TERESA STOCKTON, on behalf | Case No.: No. 10-cv-5810-DMG(JEM) |
| 18 of themselves and all others similarly | |
| situated, | Putative Class Action |
| 19                        Plaintiffs, | <u>Discovery Motion</u> |
| 20           vs. | |
| 21 WALT DISNEY PARKS AND | JOINT STIPULATION CONCERNING |
| RESORTS US, INC., DISNEY | DISCOVERY DISPUTE AND |
| 22 ONLINE, INC., DOES 1-10, | PLAINTIFFS' MOTION TO COMPEL |
| 23 INCLUSIVE, | AND FOR SANCTIONS PURSUANT |
| | TO L.R. 37 |
| 24 | |
| 25                  Defendants. | |
| 26 | Discovery cut-off date: June 28, 2011 |
| 27 | Pre-trial conference date: October 4, 2011 |
| | Trial date: November 1, 2011 |
| 28 | |

Page 1                                    10-cv-5810-DMG(JEM)

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

*(left margin, vertical)* FORIZS & DOGALI, P.A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by Plaintiffs via e-mail and First Class Mail to **David H. Raizman, Esq.**, DRINKER BIDDLE & REATH, LLP, 1800 Century Park East, Suite 1400, Los Angeles, CA 90067, David.raizman@dbr.com, this **22nd** day of March 2011.

Respectfully submitted,


*/s/A. Anderson B. Dogali*
A. ANDERSON B. DOGALI
*Pro Hac Vice*
Fla. Bar No.:0615862
adogali@forizs-dogali.com
FORIZS & DOGALI, P.A.
4301 Anchor Plaza Parkway, Suite 300
Tampa, FL 33634
Phone: (813) 289-0700
Fax: (813) 289-9435

EUGENE FELDMAN, SBN 118497
genefeldman@mindspring.com
EUGENE FELDMAN, ATTORNEY AT LAW,
     APC
555 Pier Avenue, Suite 4
Hermosa Beach, California 90254
Phone: (310) 372 4636
Fax: (310) 376 3531
*ATTORNEYS FOR CARI SHIELDS, AMBER BOGGS,*
*TERESA STOCKTON AND THE PUTATIVE CLASS*

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

**INDEXED**

**TABLE OF CONTENTS**

Plaintiffs/Movants' Introduction ............... 5

Defendant's Introduction ............... 7

The Disputed Issues ............... 9

Production/Redaction ............... 10

Remedy ............... 13

Defendants' Response ............... 13

Failure to timely produce and lack of privilege log ............... 22

Remedy ............... 24

Defendants' Response ............... 25

Exhibit A- Scheduling Order

Exhibit B- Declaration on behalf of Plaintiff

     Ex.1 Online Response

     Ex. 2 Walt Disney Response

     Ex. 3  Letter of January 11, 2011

     Ex. 4 Examples of related complaints

     Ex. 5 Cast Member/Employee complaint

     Ex. 6 Redacted document re: Ms. Shields

Exhibit C- Declaration of David H. Raizman in Support of Defendants' Portions of Joint Stipulation Concerning Discovery Dispute

     Ex. A December 6, 2010 Scheduling And Case Management Order Re Court Trial

     Ex. B Sample of Terms Used to Search for Potentially Responsive Documents

     Ex. C December 2-3, 2010 and January 7, 2011 Email Correspondence Between Counsel

FORIZS & DOGALI, P.A.

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

1        Ex. D January 6, 2011 Email Correspondence Between Counsel

2        Ex. E Invoice from Contract Attorney Placement Agency

3        Ex. F January 10-14, 2011 Email Correspondence between Counsel

4        Ex. G February 4, 2011 Letter to Plaintiffs' Counsel (misdated February 3,

5        2011)

6        Ex. H February 8, 2011 Email Correspondence Between Counsel

7        Ex. I February 19 and 22, 2011 Email Correspondence Between Counsel

8        Ex. K January 19, 2011 Email Correspondence Between Counsel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORIZS & DOGALI, P.A.

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

1

## INTRODUCTION

2   In the Case Management Report (Doc. 28) filed with the Court on November 23,

3   2010, the Parties to this suit agreed that "in the event that a dispute arises regarding any

4   discovery issue, the Parties agree to attempt to resolve the dispute **INFORMALLY."**

5   (emphasis added). And from that date until Wednesday, February 23, 2011, the Parties

6   operated according to that agreement, discussing a variety of discovery issues on a

7   number of occasions through face-to-face meetings, telephone conferences and the

8   electronic exchange of written communications.

9   Those informal exchanges, while not in strict compliance with the form of Local

10   Rule 37-1, complied with the substance of the rule in light of the November 23rd

11   agreement. On February 7, 2011 the Parties discussed a number of outstanding

12   discovery issues in detail and the case law, which had been previously relied upon by

13   each side to support its position.

14   Plaintiff's counsel Eugene Feldman met with Disney attorney Daivd Raizman at

15   Mr. Raizman's office in Century City. Plaintiff's lead counsel Andy Dogali participated

16   in the conference by telephone. Both sides subsequently provided the other their notes

17   concerning the meetings, the discussions, what was agreed to and what was not. At the

18   conclusion of the February 7th meeting it was clear that the following outstanding

19   discovery issues had yet to be satisfactorily resolved:

20   1. The redaction of documents already produced by defendants;

21   2. The production of documents, by defendants generally (or lack thereof);

22   3. The absence of a timely production of a privilege log to account for the fact

23   that approximately thirty percent (30%) of documents reviewed by Disney to

24   that date were clearly being withheld from the actual production;

25   4. Rule 35 independent medical examination of two of the Plaintiffs (Boggs

26   and Shields);

27   5. Deposition dates of Disney employees; and

28

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

FORIZS & DOGALI, P.A.

1

2

6.    A confidentiality agreement requested by Disney as a condition of document production.

3

4

5

6

7

8

9

10

11

12

13

14

The Parties had previously set a formal meet and confer conference for Wednesday, February 23, 2011. The designated purpose was to discuss an apparent inability to schedule the Court ordered mediation within the then existing March 25, 2011 deadline. Following a series of email exchanges between lead counsel for both Parties, Mr. Dogali, on Saturday, February 19, 2011 specifically advised Mr. Raizman that Plaintiffs intended to "meet and confer" not only concerning Disney's compliance with the mediation deadline about the following discovery issues: The physical examination of the Plaintiffs pursuant to Rule 35, Disney's refusal to provide deposition dates, Disney's refusal to timely produce documents, Disney's refusal to timely produce a privilege log, Disney's unauthorized redaction of documents, what sanctions Plaintiffs would seek against Disney for its disregard of the Court's discovery rules and scheduling orders.

15

16

17

18

19

20

21

22

23

24

25

26

27

Attorney Eugene Feldman met personally with Mr. Raizman at his office at 10:00 a.m. on February 23, 2011. Mr. Dogali, Mr. Atkinson and Ms. Galloway appeared by telephone.   The Parties were able to resolve the mediation issue.   In an email on Tuesday, February 22, 2011, Mr. Raizman had indicated his willingness to provide deposition discovery scheduling dates for the witnesses at issue at the "meet and confer" and that issue was resolved at the meeting.  In the email of February 22, 2011, Mr. Raizman, for the very first time, raised the issue of strict compliance with Rule 37-1, in complete disregard of the previous conduct of the Parties and the stipulation and agreement of November 23, 2010 that a more informal resolution of discovery disputes would be used.  After the mediation and deposition issues had been resolved, Mr. Raizman was specifically asked if he was refusing to meet and confer on the remaining outstanding discovery issues between the Parties. He unequivocally stated that he was refusing to do so because of the lack of strict compliance with Local Rule 37.  Mr.

28

Page 4

10-cv-5810-DMG(JEM)

1 | Atkinson suggested to Mr. Raizman that in light of the previous conduct of the Parties
2 | and particularly the memorandum of the discussions of February 7, 2011 that a
3 | substantive compliance with the Rule had occurred and that further delay in light of the
4 | discovery cut-off deadline would be unconscionable. Mr. Raizman was asked again if,
5 | having resolved two of the discovery issues he would discuss the others. In response, he
6 | again refused and angrily hung up on counsel.

In light of the agreement of the Parties on November 23, 2010, their respective conduct concerning discovery as more specifically set forth below and the looming discovery cut-off date of June 28, 2011, Plaintiffs believe it appropriate to forward to counsel for the Defendants the Joint Stipulation required by Local Rule 37-2.2 so that this matter might be moved forward and discovery might be timely provided.

## DEFENDANTS' INTRODUCTION[1]

Throughout this case, Defendants have acted properly, in good faith and at great expense to meet the demands of Plaintiffs' discovery requests. As a result of Plaintiffs' overbroad document requests,[2] Defendants had the enormous task of identifying, collecting and reviewing a massive amount of potentially responsive documents. To date, Defendants have reviewed over 65,000 *potentially responsive* documents, which amounts to over 520,000 pages, collected from 33 custodians and spent more than 2,700 attorney hours and $137,000 simply on the actual review of those documents.

---

[1]    The version of the Joint Stipulation first provided for Defendants' signature on March 18, 2011 contained unidentified changes to Plaintiffs' portions of the Joint Stipulation. Plaintiffs have since rejected Defendants' requests to return their portions to those that they had initially provided to Defendants. Rather than revise Defendants' portions in response to Plaintiffs' changes, Defendants merely note here that Plaintiffs' portions changed from that provided to Defendants and will address the changes, as needed, in their Supplemental Memorandum.

[2]    Notably, Plaintiffs' discovery was also improperly served: (1) during the initial discovery hold period prior to the parties' early meeting of counsel; (2) regarding the merits of the case although no class has been certified; and (3) on a defendant (Disney Online) who should not have been named as a defendant at all and should have been dismissed as it has no role in any of the issues raised by Plaintiffs in this case.

FORIZS & DOGALI, P.A.

1  Defendants have also produced more than 4,000 pages of responsive documents on a
2  rolling basis beginning on January 11, 2011 and have logged over 900 documents on a
3  privilege log. Since learning of the enormity of the task at hand, Defendants have kept
4  Plaintiffs apprised of the number of documents being reviewed and the challenges of the
5  review. Yet despite knowledge of these facts since early January 2011, Plaintiffs have
6  waited more than six weeks before raising any issue about the pace of Defendants'
7  document production and then launched a last minute request for a meet and confer
8  session, without complying with any of the requirements of Local Rule 37-1 regarding
9  discovery meet and confer sessions, all the while refusing to respond to Defendants'
10 repeated requests to meet and confer with Plaintiffs regarding some of the very same
11 issues previously raised by Defendants. Therefore, Plaintiffs' claims, including those in
12 their Introduction, that Defendants improperly refused to meet and confer with them
13 regarding the subjects contained in this Joint Stipulation are not well-taken.

14      Plaintiffs' discovery motion and the relief sought in the motion should be denied
15 for each of the following independent and sufficient reasons, further explained below:

16      1.      Defendants have diligently participated in the discovery process, including
17 by searching for, identifying and reviewing over 65,000 *potentially responsive*
18 documents (consisting of over 520,000 pages), producing responsive documents (over
19 4,000 pages of documents to date) and preparing a privilege log identifying over 900
20 documents. In fact, Defendants currently predict that they should be able to complete
21 their production and the corresponding privilege log by no later than March 25, 2011, a
22 fact Plaintiffs would have learned had they properly engaged in the meet and confer
23 process required by Local Rule 37-1.

24      2.      Plaintiffs have admitted that they did not meet and confer in compliance
25 with the provisions of Local Rule 37-1, despite several invitations and suggestions by
26 Defendants to do so. Thus, by operation of Local Rule 37-1, Plaintiffs' motion should
27 not be heard. The so-called agreement of the parties to attempt to resolve discovery

28

FORIZS & DOGALI, P.A.

1   disputes informally is **consistent with** the requirements of Local Rule 37-1 but surely

2   does not eliminate the Rule's requirements, nor the mandates of Section I.B.2 of the

3   Court's subsequent December 6, 2010 Scheduling And Case Management Order Re

4   Court Trial. (Ex. A to Declaration of David H. Raizman ("Raizman Decl.").)

5       3.       Plaintiffs have admitted that they agreed that, instead of producing a

6   privilege log, Defendants should first focus on the production of documents and then

7   work to generate a privilege log so as not to slow down the periodic production of

8   documents. (Joint Stipulation at 10:3-5; Raizman Decl. ¶ 16 and Ex. H.)

9       4.       Plaintiffs have consistently thwarted Defendants' repeated efforts to resolve

10  issues regarding the redaction of certain documents and the protection of other private,

11  confidential proprietary information.   For example, Plaintiffs summarily rejected

12  Defendants' proposed protective order within 26 minutes of receipt without any

13  explanation, and then, after further consideration, withdrew the rejection of the proposed

14  protective order as whole, but refused the proposed attorneys' eyes only designation for

15  the most sensitive information, even after the presentation of case law in support of such

16  a designation.   Further, Plaintiffs have refused to respond to Defendants' February 4,

17  2011 letter seeking to meet and confer on Defendants' proposed motion for a protective

18  order; and

19      5.       Plaintiffs have also failed to identify a single document request for which

20  Defendants have not properly responded, nor have they addressed even a single of

21  Defendants' valid objections to Plaintiffs' document requests.

22  **The Disputed Issues**

23  The issues in dispute are:

24  1. Defendants' failure to produce documents in a timely manner and in a coherent

25      method in providing document discovery;

26  2.       Defendants' unilateral redaction and withholding of documents in the

27  absence of an agreed-upon confidentiality agreement;

28

FORIZS & DOGALI, P.A.

1    3.    Defendants' specific deletion and redaction of the names, website addresses

2    or other identifying information concerning complainants whose written or email

3    complaints have been provided in discovery;

4    4.    Defendants' failure to provide a privilege log covering the documents

5    already withheld or any others within 30 days as required by law.

6    **Defendants' Comments On Plaintiffs' Statement Of Disputed Issues**

7         Defendants note that, although Plaintiffs are entitled to identify the issues they

8    claim to be in dispute, their discussion of the issues below does not correspond to the

9    presentation of these issues.  For example, there are four issues discussed above, but

10   only two titled sections below – "The Production (or Lack Thereof) to date" and "The

11   Flagrant Lack of Production and Failure to Produce a Privilege Log."  The second titled

12   section arguably addresses for a second time the "lack of production" issue arguably

13   addressed in the first section.  Not only does this jumbled presentation make it difficult

14   for Defendants to respond to the stated issues, it is also likely to confound the Court

15   about what issue is being addressed and where it is addressed.  Should Plaintiffs re-

16   organize the Joint Stipulation after receiving Defendants' portions, Defendants reserve

17   the right to have a full and fair opportunity to re-organize their contributions to this Joint

18   Stipulation. Defendants will, however, proceed based on the Joint Stipulation provided

19   and attempt to address each of the four issues identified by Plaintiffs above within the

20   construct of the two sections below.

21        **The Production (or Lack Thereof) to date**

22        Plaintiffs' served Requests to Produce upon both Defendants October 27, 2010.

23   The first productions from either Defendant were received on January 11, 2011.  The

24   productions encompassed seventy pages.  Combined supplements were then provided to

25   the Plaintiffs on January 13, 2011 (44 pages), January 14th (147 pages), January 21st (24

26   pages), February 3rd and 4th (551 pages) and February 7th 409 additional pages.  In a

27   letter accompanying the first production, Defendants stated they had withheld

28

FORIZS & DOGALI, P.A.

1    documents because of the lack of a confidentiality agreement.   See Exhibit 3 to
2    Declaration ("Declaration of Lee Atkinson), Exhibit B hereto.

3            On February 3, 2011 in a letter to Counsel for the Plaintiffs, Mr. Raizman stated
4    unequivocally that as of that date his Client had expended "thousands of hours" and
5    "over $100,000" reviewing several years worth of documents. On February 3, 2011, Mr.
6    Raizman specifically indicated that ten employees had been working forty hours a week
7    for six weeks reviewing the forty-five thousand records that had previously been
8    identified as responsive to Plaintiffs' requests (that amounts to over 3 minutes per
9    document or record).   Mr. Raizman specifically suggested that this review included
10   selecting out documents which might be confidential as proprietary or confidential as
11   attorney-client or work product privileged in the initial review of those documents but
12   that more careful scrutiny of those withheld had to be undertaken.

13           On February 7, 2011, Mr. Dogali agreed with Mr. Raizman that if Plaintiff had to
14   choose between the actual production of the documents and the production of a privilege
15   log, production of the non-privileged documents was the priority.   Mr. Raizman
16   suggested that in that case the production of documents might be completed by the end
17   of the following week (or February 14, 2007), with the privilege log to follow shortly
18   thereafter.   No further documents appeared after February 7, 2011 until February 25,
19   2011 when another one thousand five hundred eight five (1583) pages were produced,
20   bringing the total to just over 2800 pages with just over 500 withheld. That is about 5%
21   of the universe of documents Defendant claims to have identified.

22           On March 3, 2011, an additional seven pages were provided (Exhibit 6 to Exhibit
23   B).   The pages are substantially redacted even though the pages appear to refer to an
24   incident involving Plaintiff Shields and about which she was questioned in detail during
25   her deposition of December 6, 2010.   It seems incongruous Disney had not provided
26   these pages before March of 2011.

27
28

FORIZS & DOGALI, P.A.

Page 9                     10-cv-5810-DMG(JEM)

1        The random, haphazard and incomplete nature of the document production

2   Defendants have utilized has impaired Plaintiffs' ability to prepare for both the pending

3   April 15, 2011 motion for class certification and the November 1, 2011 trial.  "Last

4   minute tender" of discovery does not cure effects of discovery misconduct. *Henry v. Gill*

5   Industries, Inc. 983 F.2d 943, 947 (9th Cir. 1983).  Nor does belated compliance preclude

6   the imposition of discovery sanctions.

7        The legal basis for withholding the documents has never been provided.

8   Moreover, some of the documents contain significant redactions and at least twenty

9   percent (20%) of the documents are redundant copies.  Finally, it should be noted that in

10   the discovery to date there has been no real delineation between which records have

11   been provided by Disney Online and which records have been provided by Walt Disney

12   Parks and Recreation, nor any effort to identify the documents by reference to a specific

13   production request.  It should also be noted this Court declined to bifurcate discovery.

14        More importantly, through redactions concerning complainants' complaint

15   communications to Disney, Disney has deleted or withheld the identity of the visually

16   impaired persons who complained without any legal justification therefore.  Plaintiffs

17   propose that these complainants are witnesses with relevant testimony concerning issues

18   in the case and therefore their names and indentifying information should have been

19   provided as a supplement to the original Rule 26 discovery provided.  That these persons

20   might also be members of the class does not change to fact that Disney has no legitimate

21   interest in, or right to, withhold their identity or contact information.  (See Exhibits 4 and

22   5 to Declaration, Exhibit B).

23        This redaction issue was discussed between counsel for the Parties in exchanges

24   on January 20th and February 1, 2011 with Mr. Dogali specifically citing Mr. Raizman to

25   the Pioneer line of cases. (*Pioneer Electronics, Inc. v. Superior Court*, (2007) 40 Cal.4th

26   360, 53 Cal.Rptr.3d 513, 150 P3d 198.  On February 1st, Mr. Dogali specifically advised

27   Mr. Raizman he would be filing a Motion to Compel since the Parties could not resolve

28

Page 10        10-cv-5810-DMG(JEM)

FORIZS & DOGALI, P.A.

1    the issue.   The issue was discussed yet again on February 7th and was noticed for

2    discussion on February 23, 2011.

3         For a thorough discussion of the issues concerning identification of witnesses who

4    might also be putative class members for purposes of class action lawsuits (even over the

5    objection of the individuals whose privacy interests might be invaded), Plaintiff would

6    direct the Court to *Alch v. Superior Court*, 165 Cal. App. 4th 1412, *rev. den.* September

7    15, 2008, *rev. den.* 2008 (2008) which contains a thorough discussion of the criteria for

8    establishing whether an invasion of privacy would exist in such a disclosure and the fair

9    resolution of the dispute when the class action Plaintiffs have demonstrated the request

10   for information is directly relevant to their claims and essential to the fair resolution of

11   the lawsuits, (applying both *Pioneer Electronics* and *Hill v. National Collegiate Athletic*

12   *Association*, 865 P.2d 633 (1994)).

13        See also, *Stone v. Advance America*, 2009 WL 4722924 (S.D.Cal.) (Magistrate

14   Judge McCurine, Jr.) opining that pre-certification discovery can include contact

15   information for putative class members and recognizing plaintiff's counsel has a

16   fiduciary relationship with putative class members; and 2010 WL 1433540 (S.D.Cal.)

17   (over-ruling objections to Magistrate's Order).

18        Disney has an ongoing obligation to disclose information about the complainants

19   because they are witnesses, whose indentify and relevant testimony are known to

20   Disney.   This information should already have been provided as a supplement to

21   Disney's Rule 26(a)(1)(A) disclosures.  The identity and location of persons who know

22   any discoverable matter is the very basic discovery to which Plaintiffs were clearly

23   entitled under the rules. (*Swaerez, supra*).

24   **The Remedy**

25   On this issue Plaintiffs seek an order of this Court compelling the Defendants to identify

26   as completely as possible each of the complainants whose complaints they have

27   provided to date and to provide all future complaints uncovered in their further review

28

FORIZS & DOGALI, P.A.

1   and production of documents, which must be produced in an unredacted form.

2

3   **Defendants' Response to "The Production (or Lack Thereof) to date" Section**
4   **of the Joint Stipulation[3]**

5   A.   **Defendants Have Undertaken a Massive and Good Faith Effort to Identify**
6        **and Promptly Produce Responsive Documents to Plaintiffs.**

7            At all times, Defendants have acted diligently and in good faith to produce

8   responsive documents to Plaintiff.   Upon receipt of Plaintiffs' document requests,

9   Defendants began the task of determining how to identify and collect responsive

10  documents.[4]   Specifically, Defendants faced very challenging issues associated with

11  identifying responsive documents, let alone reviewing and producing them, due to the

12  breadth and scope of those requests.   For example, Plaintiffs' overbroad document

13  requests included:

14          •    "Any and all documents regarding comments or complaints by visually
15               impaired users of the Disney websites. . . ." (Disney Online ("DO") Request
16               No. 5.)

17          •    "Any and all internal correspondence . . . regarding the Disney websites and
18               accessibility for the visually impaired." (DO Req. No. 8.)

19          •    "Any and all documents relating to Disney's policies and procedures
20               regarding providing accommodations for persons with visual impairments
21               . . . ." (WDPR Req. No. 2.)

22

23  ---

    [3]     Defendants reincorporate by reference here their concerns about this Joint Stipulation's
    organization and the resulting confusion.  Nevertheless, Defendants will generally try to address in this
24  section questions about the adequacy of its production efforts to date.
    [4]     Notably, Defendants began the process of identifying and collecting potentially responsive
25  documents even though Plaintiffs had propounded discovery in direct contravention of Rule 26(d)(1) of
    the Federal Rules of Civil Procedure on October 27, 2010, before the parties had conducted their Rule
26  26(f) conference, which did not occur until November 12, 2010. Fed. R. Civ. Proc. 26(d)(1); (Raizman
    Decl. ¶¶ 4-5.)
27

28

FORIZS & DOGALI, P.A.

1    •   "Any and all complaints by visually impaired users of the audio description
2        devices at Disney's theme parks. . . ." (WDPR Req. No. 18).[5]

3    Such requests effectively called for the search through the hard copy and electronic
4    records of dozens of employees in each of the two large defendant entities for responsive
5    information.[6]  (Raizman Decl. ¶ 6.)  Because Defendants did not maintain records in any
6    way related to the definition of Plaintiffs' requests, Defendants formulated a broad
7    search term list designed to identify potentially responsive documents and then ran that
8    term search through the electronic records of 33 employees reasonably believed to
9    possess potentially responsive documents.  Those searches, along with other sources of
10   potentially responsive documents, to date, have turned up over 65,000 *potentially*
11   *responsive* documents, consisting of over 520,000 pages of documents.  (Raizman Decl.
12   ¶ 6 & Ex. B (example of search term list).)  Each page of those documents needed to be
13   reviewed for responsiveness, privilege, privacy considerations and the like.  As a result,
14   Defendants' good faith efforts to respond to Plaintiffs' document requests required the
15   massive expenditure of time and resources in the review of over half a million pages of
16   documents.  (Raizman Decl. ¶¶ 10-11.)

17
18

19   [5]   Defendants interposed valid objections to each of these requests.  (*See* Exs. 1-2 to Declaration
20   of Lee Wm. Atkinson ("Atkinson Decl.").)  Notably, Plaintiffs do not challenge the validity of any of
     Defendants' objection to these or Plaintiffs' other document requests, except for attempting to apply a
21   broadside "boilerplate" label to the objections.  Moreover, as Plaintiffs have failed to support the
     validity of their discovery requests in the first instance, they should be barred from compelling the
22   production of documents in response to any request that they have not established is valid.  *See e.g.,*
     *Soto v. City of Concord,* 162 F.R.D. 603, 610 (N.D. Cal. 1995); *Randle v. Franklin,* 2010 WL 3069205
23   *2 (E.D. Cal. 2010).
24
25   [6]   Certain of Plaintiffs' interrogatories also effectively called for an extremely broad search of
     documents because Defendants properly elected, pursuant to Rule 33(d), to produce business records
26   instead of reviewing and the laboriously listing each of the responsive documents.  (Raizman Decl. ¶
     7.)  Plaintiffs have never mentioned nor objected to Defendants' use of Rule 33(d) on this issue, nor
27   have they sought any meet and confer or discovery motion relief with respect to Defendants' ongoing
28   production of documents pursuant to Rule 33(d).  (*Id.*)

Page 13                          10-cv-5810-DMG(JEM)

FORIZS & DOGALI, P.A.

1    Without knowing how many documents these term searches would generate on
2    any given user's electronic records, Defendants nonetheless realized that the production
3    was going to be extremely burdensome.   It is for this reason that Plaintiffs granted
4    Defendants an extension of their document response and production deadlines.
5    (Raizman Decl. ¶ 8 & Ex. C.)

6    By early January 2011, over 125,000 pages of documents had arrived at
7    Defendants' law firm, with more on the way, though Defendants did not know how
8    many more. (Raizman Decl. ¶ 9.)  Therefore, on January 6, 2011, Defendants shared
9    with Plaintiffs the details regarding the difficulties in the identifying, collecting and
10   reviewing that quantity of potentially responsive documents on January 6, 2011.  (*Id.*
11   and Ex. D.)

12   In addition, in early January, Defendants hired five contract lawyers and then
13   quickly expanded that team to ten lawyers, whose sole and full-time job was to review
14   this massive set of documents. (Raizman Decl. ¶ 9.)  The cost of these contractors alone,
15   excluding the corresponding cost of training and supervising this team and loading this
16   quantity of documents onto a system capable of organizing and sorting the documents,
17   exceeds $137,000.  (*Id.* ¶ 11 and Ex. E.)  These contractors, through early March, have
18   spent over 2,700 hours reviewing potentially responsive documents.  (*Id.*)

19   Once this operation was up and running smoothly by mid-January, Defendants
20   have repeatedly and periodically made productions of documents, beginning on January
21   11, 2011, which Plaintiffs never objected to until late February 2011. (Raizman Decl. ¶¶
22   9, 12.)  Plaintiffs themselves detail these productions above, although they omit the
23   subsequent productions, which include productions on March 3, 8 and 11 of an
24   additional 1,266 pages of documents.  (*Id.* ¶ 12.)

25   When in early February 2011, Plaintiffs and Defendants discussed the status of the
26   production and the privilege log, much of this was described to them. (Raizman Decl. ¶
27   15 and Ex. G.)  On the specific issue of the privilege log, Plaintiffs agreed (as they admit

28

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

FORIZS & DOGALI, P.A.

1   here) that Defendants were properly focusing on the production of documents, which

2   could be followed by preparation of a privilege log.  (*Id.*)  At this point in time, Plaintiffs

3   had not raised any concern about the pace of Defendants' production of documents.

4   (*Id.*¶ 10.)

5          To date, Defendants have produced over 4,000 pages of responsive documents

6   and logged over 900 documents on a privilege log.  At present, Defendants believe that

7   they will complete their review and production of the documents available to them and

8   the logging of all documents withheld or redacted by operation of any privilege from

9   disclosure by March 25, 2011 – *a key fact Plaintiffs would have learned had they*

10  *properly engaged in the requisite pre-motion filing meet and confer procedure.*

11  (Raizman Decl. ¶ 13.)  Thus, for all of these reasons, Defendants acted diligently and in

12  good faith in response to Plaintiffs' document requests and in their subsequent

13  production of documents.

14  **B.     Defendants Have Properly Asserted Objections to Production of Certain**

15          **Confidential and/or Privileged Documents.**

16          Although Plaintiffs contend that Defendants have never asserted any legal basis

17  for withholding certain information, their contention is simply wrong.  At the outset,

18  Defendants note that Plaintiffs' failure to identify any specific response of Defendants

19  that they find objectionable leaves Defendants to guess as to the specific document

20  requests that they challenge by way of this Joint Stipulation.  This ambiguity is further

21  compounded by Plaintiffs' failure to properly meet and confer in advance of their

22  motion as required by Local Rule 37-1.  Notwithstanding such, Defendants respond to

23  Plaintiffs' claims as specifically as possible.

24          Defendants have on several occasions asserted their objections to Plaintiffs'

25  document requests, and therefore, the basis for withholding certain documents from

26  production.  For example, in their responses to Plaintiffs' document requests, Defendants

27  identified several bases for withholding production of certain documents, including,

28

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

1  most significantly, due to the attorney-client privilege, attorney work product and

2  because Plaintiffs sought Defendants' trade secrets or other confidential, proprietary or

3  private information. (*See* Exs. 1-2 to Atkinson Decl.) Notably, the declaration

4  submitted in support of Plaintiffs' instant motion contains the very objections that serve

5  as the basis for Defendants' withholding of select documents on the basis of privilege,

6  confidentiality and/or privacy. (*See id.*) Defendants again alerted Plaintiffs to the basis

7  of withholding certain documents due to the confidential, proprietary and/or private

8  nature of the information sought in a January 19 email and a February 4 letter. (Exs. G

9  and K to Raizman Decl.) Thus, Plaintiffs' contention that Defendants have not asserted

10  any basis for withholding certain privileged, confidential or private information is

11  without basis.

**C.    Defendants Acted in Good Faith to Protect the Privacy Interests of Third
         Parties in Their Disability Status.**

Despite all of Plaintiffs' assorted allegations, the only remedy sought in the first

titled section is production of guest names and other identifying information contained in

complaints made to Defendants by persons with visual impairments. Defendants'

redaction of such information was proper and was done to protect those individual's

constitutional, statutory and common law rights of privacy. Indeed, courts recognize the

propriety of redacting third party guest names and identifying information on the basis

of privacy. *See, e.g., Bible v. Rio Properties, Inc.,* 246 F.R.D. 614, 620-21 (C.D. Cal.

2007). Moreover, the Ninth Circuit has recognized the privacy interest in maintaining

the confidentiality of one's disability. *See also Multnomah Cty. Med. Society v. Scott,*

825 F.2d 1410, 1416 (9th Cir. 1987); 28 C.F.R. §§ 36.302(c)(6) (DOJ regulations

prohibiting public accommodations from asking individuals about the nature of their

disabilities).

Certainly, individuals could not have expected that their private disability status

would be disclosed and made public merely because they lodged a complaint with

FORIZS & DOGALI, P.A.

Defendants. Thus, given the strong interest in maintaining the confidentiality of one's disability status, including as recognized by the Ninth Circuit in *Multnomah* and the DOJ, Defendants have redacted the names and identifying information for guests who have lodged complaints while still producing the complaints themselves to Plaintiffs. Ironically, it is Plaintiffs who seek through their class certification motion to represent an international class of persons with disabilities, but have no qualms in revealing highly private information about the disability status of third parties without their permission. Given the strong privacy interest in maintaining the confidentiality of one's disability, Defendants acted in good faith by producing all of the guest complaints sought by Plaintiffs, namely complaints by persons with visual impairments and service animals, and redacting the names and other identifying information of guests in order to protect the privacy of their disability status.

As such, Plaintiffs' request for disclosure of such highly private information and Plaintiffs' motion to compel should be denied.

**D. In Contrast, Plaintiffs Have Failed to Act in Good Faith and to Meet and Confer on the Instant Motion or on Defendants' Proposed Motion For Protective Order.**

Much of the information sought by Plaintiffs in their motion would have been produced had the parties been able to reach agreement on a stipulated protective order or Plaintiffs responded to Defendants' repeated requests to meet and confer regarding the proposed protective order pursuant to Local Rule 37-1. On January 10, 2011, Defendants presented Plaintiffs with a proposed protective order that would have provided for the limited use and disclosure of certain confidential, proprietary and/or private information, which Plaintiffs' counsel summarily rejected without explanation within 26 minutes of its transmittal. (Raizman Decl. ¶ 14 and Ex. F.) Defendants immediately invited Plaintiffs to state their objections or to call to discuss them. (*Id.*) By the next day, Plaintiffs' counsel had revoked his summary rejection and restricted

1    himself to three objections, two of which Defendants accepted the following day. (*Id.*)

2         Ultimately, the parties could not come to an agreement, so Defendants sent a letter

3    to Plaintiffs on February 4, 2011 (misdated February 3, 2011) (Raizman Decl. ¶ 15 and

4    Ex. G.) that, among other things, formally sought a meet and confer pursuant to Local

5    Rule 37-1 on Defendants' proposed protective order.  Unlike anything that Plaintiffs

6    have done in connection with the instant motion, the letter cited extensive authority,

7    stated the relief Defendants sought and asked for a meet and confer session within ten

8    days of the letter.  (*Id.*)[7]  To date, Plaintiffs have refused to meet and confer regarding

9    Defendants' proposed protective order.  (*Id.* ¶ 15.)  In fact, despite conducting a

10   February 7, 2011 meet and confer session on Plaintiffs' motion for class certification at

11   which the protective order was again discussed, Plaintiffs expressly refused to treat those

12   discussions as satisfying the Local Rule 37-1 requirement and subsequently never

13   responded to Defendants' February 4 and subsequent February 8 requests for such a

14   session. (Raizman Decl. ¶ 16 & Ex. H.)

15        Plaintiffs' very own failure to meet and confer on Defendants' motion directly

16   impacts several of the issues that they raise here on this motion, including the redaction

17   issue and the alleged failure to promptly produce documents.  Not only has it delayed the

18   making of Defendants' motion for a protective order, just as importantly, it has delayed

19   the production of documents that Defendants are otherwise prepared to make once a

20   protective order has been entered.

21        Further, Plaintiffs have brought the instant motion while simultaneously refusing

22   to notice or conduct a proper meet and confer on the document production (and privilege

23   log), despite several express, oral and written suggestions by Defendants to do so.

24   Indeed, the very first mention by Plaintiffs of motion practice of any kind on the issue of

25

26   [7]    Defendants' February 4 letter also responded to an unsupported attack leveled by Plaintiffs'
     counsel in a February 1, 2011 email, which, notably, while it made false accusations against
27   Defendants on a number of fronts, did not address any issues about the failure to produce documents.
     (Raizman Decl. ¶ 15 & Ex. G.)
28

FORIZS & DOGALI, P.A.

1  the pace of document production and privilege log was made in a Saturday, February 19

2  email. In that President's Day weekend email, Plaintiffs' counsel unilaterally insisted on

3  a meet and confer only one intervening business day ahead (Wednesday, February 23) as

4  to these discovery issues he added to a meet and confer session that had already been set

5  for that day on Plaintiffs' threatened motion to compel mediation. (Raizman Decl. ¶¶

6  17-18 & Ex. I.) Plaintiffs' February 19 email, however, plainly falls short of Local Rule

7  37-1 in several respects, including: (1) unilaterally insisting on a date (only one

8  intervening business day ahead) for the meet and confer; (2) selecting a date that did not

9  provide a reasonable amount of time for Defendants to agree to, prepare for and conduct

10  a meet and confer session; (3) failing to cite to any discovery request that was at issue (a

11  failure repeated in the instant motion); and (4) failing to state what relief, if any,

12  Plaintiffs were seeking. *See* Local Rule 37-1. Perhaps it is not surprising that Plaintiffs

13  had not complied with Local Rule 37-1 up to that point because Plaintiffs' counsel's

14  February 19 email only references Local Rule 7-3 in seeking a meet and confer, which

15  does not include the specific items that must be included in a written meet and confer

16  request regarding a discovery dispute.

17  On Tuesday, February 22, 2011 (the next business day), Defendants pointed out

18  the numerous deficiencies in Plaintiffs' February 19 email, noting that Defendants would

19  proceed to meet and confer with Plaintiffs on February 23 on the prior, agreed-upon

20  issue of mediation scheduling, but would not meet and confer on discovery issues related

21  to the production of documents or a privilege loge until they complied with Local Rule

22  37-1. (Raizman Decl. ¶ 18 and Ex. I.) The email further suggested that Plaintiffs

23  comply with Local Rule 37-1, in which case Defendants would meet with Plaintiffs, as

24  required. (*Id.*) Plaintiffs responded merely by calling Defendants' email "not

25  constructive" and refusing to discuss any of the substantive issues raised in Defendants'

26  February 22 email. (*Id.*)

27

28

FORIZS & DOGALI, P.A.

1    Nonetheless, at the February 23 conference regarding mediation, Plaintiffs'
2    counsel persisted in raising the document production and privilege log issues and
3    continually goaded Defendants' counsel with questions of "So, you're refusing to meet
4    and confer?," to which Defendants' counsel responded that he would meet and confer if
5    Plaintiffs' counsel complied, even minimally with Local Rule 37-1.    Defendants'
6    counsel pointed out that several of the issues on which Plaintiffs were requesting a meet
7    and confer were not even necessary (because, for example, Defendants had the burden of
8    making a Rule 35 motion for visual examination) and reached an agreement regarding
9    other last-minute issues raised by Plaintiffs.    Defendants' counsel advised Plaintiffs'
10   counsel that a meaningful meet and confer on the complex document production issues
11   would require far more notice and preparation than Defendants had been given.
12   (Raizman Decl. ¶ 18.) Defendants repeated these positions in a February 23, 2011 email
13   to Plaintiffs' counsel (Ex. J to Raizman Decl.), again offering to meet and confer if
14   Plaintiffs complied with Local Rule 37-1 and even offering to review the string of emails
15   that Plaintiffs (wrongly) asserted at the time satisfied Local Rule 37-1.[8]  (*Id.*)  Plaintiffs
16   did not accept the offer and suggestion, and instead sent Defendants' counsel their
17   portion of this Joint Stipulation on March 7.  (Raizman Decl. ¶ 19.)

18        Plaintiffs' argument that Defendants agreed to informally resolve discovery
19   disputes in their October 23, 2010 Joint Report does not excuse them from the meet and
20   confer requirement.  First, the parties do not have the capacity to suspend the application
21   of Federal or Local Rules.    Second, Plaintiffs completely disregard that the Court's
22   December 6, 2010 Scheduling Order expressly requires the parties to comply with all
23   Local Rules, including Local Rule 37-1, with respect to discovery disputes.  Plaintiffs'
24   attempt to explain away their failure to meet and confer under the rule only underlines
25   the disregard of their own obligations. (Ex. A to Raizman Decl.)

26

27   [8]    Plaintiffs have apparently abandoned this argument because there is no support for the notion
28   that they had done anything to notice or conduct a Local Rule 37-1 conference.

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

FORIZS & DOGALI, P.A.

1     Moreover, had they undertaken the meet and confer process – either under

2  Defendants' motion for protective order or under Plaintiffs' instant motion – much of the

3  confusion and misinformation contained in their portions of the Joint Stipulation could

4  have been corrected.  For example, they would not be operating under the misimpression

5  that Defendants found 65,000 "responsive" documents from which they were somehow

6  "dribbling out" a few thousand pages of produced documents.  (Raizman Decl. ¶ 6.)

7  They would also have learned that Defendants are essentially done with their document

8  production and the completion of the privilege log and expect to have them both (with

9  the exception of certain documents containing confidential, privileged or private

10  information) to Plaintiffs' counsel by March 25, 2011.  (*Id.* ¶ 13.)  Thus, the failure to

11  meet and confer, which should not be excused in any event, has led directly to the

12  wasteful exercise of time and energy on issues that could have been resolved through a

13  good faith meet and confer.

14     In sum, the record is clear that not only have Plaintiffs failed to comply with the

15  "technical" requirements of Local Rule 37-1, they have failed to comply with any of the

16  requirements or the spirit of that rule either.  Therefore, for this additional reason,

17  Plaintiffs' motion to compel should be denied.

18  **The Flagrant Lack of Production and Failure to Produce a Privilege Log**

19     In light of the previous representations of the Defendants through their counsel, it

20  would appear that the Defendants should have expended enough time to complete

21  reviewing documents by the time this stipulation is filed with the Court, yet less than

22  5000 have been forthcoming (with at least 500 withheld and at least another 250

23  redacted), and no privilege log has been produced.  In light of the conduct of the

24  Defendants, this case is factually indistinguishable from *Burlington Northern and Santa*

25  *Fe Railroad Company v. United States District Court for the District of Montana*, 408

26  F.3d 1142 (9[th.] Cir. 2005).

27

28

FORIZS & DOGALI, P.A.

1    In *Burlington* the discovery process was characterized by delay and ultimately the

2    parties to the underlying lawsuit (the Kapsners) filed a motion to compel alleging that in

3    addition to producing documents in a new and permissible form, Burlington was

4    withholding responsive documents and had made no assurance that its production

5    exhausted the universe of responsive documents.  After five months Burlington finally

6    produced a privilege log but the opposing party challenged its adequacy.  The District

7    Court ultimately granted the motion demanding all responsive documents withheld from

8    production on privilege grounds.  Burlington sought mandamus review in the Ninth

9    Circuit.

10    The *Burlington* Court held that "Boiler Plate" objections and blanket refusals

11    inserted into a response to a Rule 34 request for production are insufficient to assert a

12    privilege.  The Court affirmed the trial court's determination that Burlington had waived

13    the privilege in that case, citing factors such as: Burlington being a sophisticated

14    corporate defendant, its prior experience in similar litigation, the five month delay in

15    providing the privilege log and then altering it.

16    The Court rejected a per se waiver rule that deems a privilege waived if the log is

17    not produced within Rule 34's thirty (30) day time limit, finding the thirty (30) day limit

18    to be a default guideline.  Plaintiff has patiently awaited the completion of the

19    production and the presentation of a privilege log, relying upon Disney's consistent and

20    continual assurances they would be "forthcoming".

21    A look at the actual production to date belies any good faith effort by Disney to

22    comply with the rules or the discovery cut-off deadline provided by the Court in this

23    case.  *See also, Swareaz Corporation Industries v. Earthwise Technologies, Inc.,* 2008

24    WL 2811162, (W.D. Wash.) (suggesting that when Parties cannot reach an agreement

25    upon a confidentiality stipulation, a motion for protective order, rather than a

26    withholding of allegedly confidential documents is the appropriate procedure to follow.)

27

28

10-cv-5810-DMG(JEM)

FORIZS & DOGALI, P.A.

1      Several district courts have come to the same conclusion in similar circumstances

2  and the following cases contain pertinent analysis. *See, e.g. A. Falser and Partners, Inc.*

3  *v. Gerber*, 234 F.R.D. 186, 188 (C.D.Cal. 2006) (rejecting use of "relating to" as

4  unnecessarily overbroad or over burdensome and reiterating that the burden is upon the

5  party asserting attorney-client and work-product privileges to establish them and finding

6  Model Form 11:A, the Rutter Group Practice guide, a template for the contents of the

7  privilege log); *Universal City Development Partners, Ltd. V. Ride and Show*

8  *Engineering, Inc.*, 230 F.R.D. 688, 693-696 (M.D.Fla. 2005) (rejecting boiler plate

9  claims of privilege as insufficient and requiring a complete privilege log and adopting

10  the *Burlington* court's "thoughtful analysis" concerning timing of production of a

11  privilege log and finding a waiver of privilege;) *Ferrito v. Ikon Office Solutions, Inc.*,

12  2000 WL 1477188 (D.Kas) (failure to identify documents by request as required by Rule

13  34(b) is improper production.)

14      The Parties have not been able to agree upon a confidentiality stipulation because

15  Disney insists a sub-category of documents be "attorney eyes only" not to be shared with

16  the Plaintiffs or others.  Counsel for the Plaintiffs refuse to accept such a restriction.

17  Disney has cited as its authority for this position a number of cases involving litigation

18  between business competitors. (including *Nutratech Inc. v. Syntech International, Inc.*,

19  242 FRD 552 (C.D.Cal. 2007) and *Whitney v. Wirtz*, 2007 WL 484788 (N.Del. 2007).

20  Needless to say, these cases are inapposite:  the Plaintiffs own no theme parks and are

21  not in competition with the Defendants.

22      This issue had ripened as early as January 22, 2011 and by February 1, 2011, Mr.

23  Dogali had informed Mr. Raizman of the intent to file a motion to compel.  The issue

24  was addressed again on February 7, 2011.  Since no confidentially agreement exists and

25  no motion for protective order has been filed, Disney had no right to withhold

26  production while the discovery cut-off date marches inevitably closer.

27  **Remedy**

28

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

FORIZS & DOGALI, P.A.

1    The Court find a waiver of proprietary confidentiality, attorney-client and work-
2  product privilege and order the immediate production and disclosure to the Plaintiffs of
3  all forty five thousand documents identified by the Defendants to be responsive to the
4  Request to Produce.

5  **Defendants' Response to "The Flagrant Lack of Production and Failure to**
6  **Produce a Privilege Log" Section of the Joint Stipulation**

7  **A.    Defendants Have Diligently and At Great Expense Reviewed and Produced**
8  **Responsive Documents and Prepared a Privilege Log.**

9    Defendants' efforts in response to Plaintiffs' discovery requests have been diligent
10  and made in good faith.   As indicated above, over 65,000 *potentially responsive*
11  documents were recovered as a result of targeted searches of the computers of 33
12  employees of Defendants as well as other potentially responsive sources of documents.
13  (Raizman Decl. ¶ 6.)   Moreover, over 900 documents have had to be logged on a
14  privilege log.  (*Id,* ¶ 13.) As a result, over 2,700 hours of contract attorney time has been
15  spent reviewing these documents at a cost of over $137,000, not including substantial
16  and real costs of training, supervision and technology assistance time and associated
17  expense.  (Raizman Decl. ¶ 11 and Ex. E.)   Therefore, Plaintiffs' claim of lack of
18  diligence is not well-taken.

19    Indeed, in early January 2011, Defendants alerted Plaintiffs to the massive
20  undertaking requested by Plaintiffs' document requests would require (when the number
21  of pages to be reviewed was only 125,000) and the inherent difficulties of review and
22  production of documents. (Ex. D to Raizman Decl.)  Beginning on January 11, 2011,
23  Defendants have produced responsive documents to Plaintiffs on a rolling basis with
24  additional productions made on a regular basis as admitted by Plaintiffs.   In early
25  February 2011, Plaintiffs also agreed that document production should take priority over
26  preparation of a privilege log. (Ex. H to Raizman Decl.)  Plaintiffs did not raise a single
27  objection regarding the pace of production of documents or delivery of the privilege log

28

FORIZS & DOGALI, P.A.

1 | until late February – approximately six weeks after Defendants' early January report on
2 | the size of the document review effort. (Raizman Decl. ¶ 18.)

3 | To date, Defendants have produced over 4,000 pages of responsive documents,
4 | and the review and production of documents and logged approximately 900 documents
5 | on a privilege log. (Raizman Decl. ¶ 13.) The review and production of documents is
6 | expected to be completed and a privilege log provided by March 25, 2011 – before any
7 | hearing on Plaintiffs' motion will be heard – which Plaintiffs would have learned had
8 | they properly met and conferred with Defendants instead of sending this Joint
9 | Stipulation to Defendants. Therefore, there is no basis for Plaintiffs' claims of lack of
10 | diligence in the review or production of documents or a privilege log.

**B. Defendants Asserted Individualized Objections to Plaintiffs' Document Requests.**

Plaintiffs' suggestion that Defendants asserted boilerplate objections to their discovery requests is also completely without basis.[9] Indeed, the facts here are in marked contrast to the factual situation presented in *Burlington,* which Plaintiffs cite. In *Burlington,* defendant did not produce any documents in response to plaintiffs' document request, instead inviting plaintiffs to inspect documents at defendant's premises. *Burlington,* 408 F.3d at 1145 (9th Cir. 2005). In addition, defendant provided a privilege log five months after its responses were due and modified the log several times, including by eliminating certain entries from the log, but not producing the documents removed claiming the documents were not responsive. *Id.* at 1149-50. Based on such egregious conduct, the court affirmed the order granting plaintiffs' motion to compel. *Id.* at 1150.

FORIZS & DOGALI, P.A.

---

[9] At the outset, Defendants note that Plaintiffs have failed to identify, much less set forth in this Joint Stipulation, any particular discovery response that they claim is improper as required by Local Rule 37-2.1.

1    None of those egregious facts are presented here to warrant the grant of Plaintiffs'
2    motion to compel.   Here, Defendants timely asserted non-boilerplate objections to
3    Plaintiffs' document requests and has been producing, not merely making available for
4    inspection, responsive documents since January 11, 2011. (*See* Exs. 1-2 to Atkinson
5    Decl.)  Defendants expressed their intent to provide a privilege log and have acted in
6    good faith to provide such a log. (Raizman Decl. ¶ 16.)  Indeed, it was at Plaintiffs'
7    request that Defendants focused on the review of the 520,000 pages of *potentially*
8    *responsive* documents first before logging privileged documents on a privilege log. (*Id.*
9    ¶ 16.) Therefore, Plaintiffs should not now be allowed to claim that Defendants have not
10   timely provided a privilege log.   Moreover, unlike the defendant in *Burlington,*
11   Defendants have not engaged in any gamesmanship by logging documents on a privilege
12   log, only to withdraw them from the log and refuse to produce them.

13       As such, Plaintiffs' request for production of all of the documents collected and
14   reviewed by Defendants (without regard to the attorney-client privilege, attorney work
15   product, private and/or confidential or proprietary information contained in such
16   documents) is wholly unwarranted.

17   **C.    Plaintiffs' Conduct Has Thwarted Defendants' Attempts to Enter into a**
18          **Protective Order to Allow for Production of Additional Documents.**

19       As already shown above, Plaintiffs' refusal to participate in the requisite meet and
20   confer process regarding *Defendants'* protective order has prevented the production of
21   certain highly confidential and/or private information that Plaintiffs now demand.  Had
22   Plaintiffs participated in the process and in good faith, Defendants would have been able
23   to produce the very documents that are at issue.

24       For all of these reasons, the broad-reaching relief sought by Plaintiffs, namely
25   production of every single document collected by Defendants for review, most of which
26   were non-responsive and irrelevant to this case, is wholly unwarranted.   As such,
27   Defendants request denial of such relief and Plaintiffs' motion in its entirety.

28

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL

1

2    Dated:    **March 22, 2011**         Respectfully submitted,

3
                                          FORIZS & DOGALI, P.A.
4
5                                         EUGENE FELDMAN ATTORNEY AT LAW,  APC

6
                                          By:*/s/ A. Anderson B. Dogali*
7                                              A. Anderson B. Dogali

8
                                          Attorneys for Plaintiffs
9

10

11   Dated:    **March 22, 2011**         DRINKER BIDDLE & REATH LLP

12

13                                        By:*/s/ David H. Raizman*
14                                            David H. Raizman

15                                        Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION CONCERNING DISCOVERY DISPUTE AND MOTION TO COMPEL