DRINKER BIDDLE & REATH LLP
David H. Raizman (SBN 129407)
david.raizman@dbr.com
Elena S. Min (SBN 235065)
elena.min@dbr.com
1800 Century Park East, Suite 1400
Los Angeles, California 90067
Telephone: (310) 203-4000
Facsimile: (310) 229-1285

Attorneys for Defendants
Walt Disney Parks and Resorts U.S., Inc.
and Disney Online

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARI SHIELDS, AMBER BOGGS and TERESA STOCKTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WALT DISNEY PARKS AND RESORTS US, INC., DISNEY ONLINE, INC. and DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No. CV10-5810-DMG (FMOx)<br><br>Putative Class Action<br><br>**DISCOVERY MATTER**<br><br>**PROTECTIVE ORDER**<br><br>[Filed concurrently with Stipulation Re. [Proposed] Protective Order]<br><br>Hearing Date: July 6, 2011 [if necessary]<br>Time: 10:00 a.m.<br>Place: Courtroom F, 9th Floor<br>Judge: Hon. Fernando M. Olguin<br><br>Discovery Cut-Off Date: June 28, 2011<br>Final Pretrial Conference: Oct. 4, 2011<br>Trial Date: November 1, 2011 |

# [PROPOSED] PROTECTIVE ORDER

Having reviewed and considered the Defendants' March 22, 2011 Motion For Protective Order, Joint Stipulation Regarding Defendants' Motion for Protective Order (Document Nos. 56-63) and the papers supporting and opposing that motion (Document Nos. 77 and 89), the accompanying Stipulation Re. Protective Order, and all other papers submitted, the Court HEREBY ORDERS THAT:

## Good Cause Statement

1. Defendants have demonstrated good cause for this protective order in that they have established specific prejudice or harm that will result in the absence of this protective order. Specifically, Defendants have established that:

(a) Defendant Walt Disney Parks and Resorts U.S., Inc. ("WDPR") has developed a number of Attraction Operating Guidelines, Cast Member Reference and Training Guides, which provide detailed information about the expectations of employees and the methods for creating a uniform Disney experience for all guests. WDPR has devoted substantial resources to develop and maintain these documents, which are continually updated as the needs of its business and guests evolve, including an entire department of thirty-seven employees responsible for creating and updating such materials. These documents are not disclosed to third parties absent a confidentiality agreement.

WDPR does not permit the disclosure of these documents to the general public because of the detrimental effect that such disclosure may likely have on its business and operations. Specifically, such materials give WDPR a distinct competitive advantage and the ability to deliver a high quality product to its visitors, which is perceived as superior to its competitors. Moreover, WDPR's competitors could use such information, which WDPR has worked so hard to obtain and analyze for their competitive advantage, including by implementing such policies, procedures and protocols at competing theme parks.

(b) WDPR obtains attendance figures as part of its business operations, limits access to such information to only certain of its employees and does not publicly disclose such information. This data is invaluable to WDPR in considering, developing and implementing business initiatives such as adding new attractions or show, new theme parks or resorts, new products and services, new marketing and sales initiatives and new pricing and promotional strategies and was developed with the expenditure of considerable efforts and resources.

This data enables Defendants to have a competitive advantage in its business in order to stay ahead of trends and modify their business policies and practices accordingly. As such, it would be detrimental to WDPR if the general public obtained access to such information because, for example, its competitors would be able to use such information for their own financial gain, including to modify their own policies and practices based on data that WDPR has meticulously compiled at great expense.

(c) Defendants have developed a comprehensive collection of data and analysis of disability-related improvements and upgrades at the Disneyland Resort, the Walt Disney World Resort. Indeed, WDPR has six dedicated employees who focus on accessibility issues for disabled guests of the Disneyland Resort and the Walt Disney World Resort. These individuals, along with others at related entities, have spent years developing detailed strategies and plans to improve and upgrade features of the Disneyland Resort and the Walt Disney World Resort. Such documents often include cost information and other like confidential financial information. Defendants share documents containing this confidential information only with those employees who need access to such information, and they are not shared with third parties.

Defendants would suffer substantial harm if such documents were disclosed to the general public. Defendants' competitors would have an unfair competitive advantage if given free access to such documents because they would

have access to data and analysis that Defendants have expended substantial time and resources to develop without having to devote any of their own time or resources.

(d) WDPR has spent thousands of hours and expended millions of dollars to research, develop and implement the Audio Description Device. The Audio Description Device provides detailed descriptions of key visual elements at over 50 attractions at the Disneyland Resort and the Walt Disney World Resort and certain outdoor areas at the Walt Disney World Resort. The technology was developed by WDPR in conjunction with Softeq Corporation pursuant to a confidential development agreement because Disney wanted to create an enhanced experience at its theme parks for guests with visual impairments.

WDPR would suffer irreparable harm if its research and development regarding the Audio Description Device was released to the public. Specifically, because the Audio Description Device is unique to the Disneyland Resort and the Walt Disney World Resort, release of such information would allow others to copy their research and development efforts and implement such devices at competing theme parks. Indeed, this information is particularly sensitive because WDPR is not aware of any other theme park that provides such a device to guests with visual impairments. Moreover, release of such information to guests would also undermine their experiences at the Disneyland Resort and the Walt Disney World Resort as WDPR has worked hard and at great expense to create a seamless interface for the device with the theme park experience, which would be undermined by the release of detailed information about the inner workings of the device. WDPR's ability to license this technology to certain third parties, which serves as an important revenue stream, would also be undermined if such information is publicly released.

(e) Third parties who lodge complaints with companies have privacy interests that deserve protection. Indeed, such privacy interest is greater when the

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

1 nature of a third parties' complaint discloses their disability status and/or
2 information about their disability.  Disclosing guest names in this context would
3 equate to Defendants identifying individuals as disabled, without their consent or
4 reasonable expectation of disclosure.

**Confidential Documents**

6 2. Any and all documents (including without limitation discovery responses) or testimony containing, regarding, referring or relating to: (a) Operating Guidelines and similar documents; (b) Cast Member Reference Guides and similar documents; (c) Cast Member Training Guides and similar documents; (d) internal documents regarding Defendants' operation of, planning of improvements at and/or business strategies relating to the Disneyland Resort, Walt Disney World Resort or their related websites; and (e) the portions of those documents containing names and contact information and disability information for WDPR guests who lodged complaints with WDPR (the "Guest Complaint Documents") shall be designated as "Confidential" and treated as "Confidential Material" for all purposes under this Protective Order.  (Collectively, these documents (or the "Confidential Material" in the Guest Complaint Documents), their contents and all testimony provided about such documents (or the "Confidential Material" in the Guest Complaint Documents) or their contents are referred to in this Protective Order as the "Confidential Material.")

**Highly Confidential Documents**

3. Any and all documents (including without limitation discovery responses) or testimony containing, regarding, referring or relating to: (a) attendance data for the Disneyland Resort and the Walt Disney World Resort; (b) work orders, improvement plans or other like documents containing financial or cost information regarding disability-related improvements or upgrades at the Disneyland Resort, the Walt Disney World Resort and/or their websites; and (c) research and development of the Audio Description Device shall be designated

"Highly Confidential – For Attorney's Eyes Only" and treated as "Highly Confidential Material" for all purposes under the terms of this Protective Order. (Collectively, these documents, their contents and all testimony provided about such documents or their contents are referred to in this Protective Order as the "Highly Confidential Material.")

**Use and Disclosure of Confidential and Highly Confidential Material**

4. The Highly Confidential Material may be disclosed only to: (a) counsel for the named parties to this action and their personnel; (b) experts and litigation consultants retained by the named parties to assist in this action; (c) court reporters; and (d) the Court and its personnel and for use solely in connection with this action. In addition to the categories of individuals identified above in this Paragraph, the Confidential Material may also be disclosed to the named parties to this action. Prior to sharing any Confidential or Highly Confidential Material with any expert or consultant, counsel of record shall provide a copy of this Order to such person and shall obtain the person's express acknowledgement that he or she will be bound by the Order.

5. Any use or disclosure of the Confidential Material or Highly Confidential Material shall be subject to the following conditions:

(a) These documents and testimony shall be used only for purposes of this litigation, including any appeals, and not for any business or other purposes of any kind. The Confidential Material and Highly Confidential Material shall not be given, shown, made available, or communicated in any way to anyone except those described in Paragraph 4 for whom it is necessary and for a purpose permitted under this Protective Order.

(b) If the propriety of the designation of any document or testimony as "Confidential" or "Highly Confidential – For Attorney's Eyes Only" is disputed by the non-designating party, the document or testimony shall be treated as Confidential Material or Highly Confidential Material, respectively, as designated

1  until the dispute is resolved as provided in this Protective Order;

2  (c) If Confidential Material or Highly Confidential Material is included, incorporated, or referenced in any papers filed with the Court, these papers shall be submitted in accordance with the procedures set forth in Local Rule 79-5 for approval for filing under seal;

6  (d) If Counsel for any Party intends to use any Confidential Material or Highly Confidential Material produced by any Party at any deposition in this action, it is that Counsel's obligation to take appropriate steps at or before the time the Confidential Material or Highly Confidential Material is used or disclosed to ensure that the confidentiality of the Confidential Material of Highly Confidential Material is preserved and that this Protective Order is not violated in any way. Prior to the use of any Confidential Material or Highly Confidential Material at any hearing in this action, the Party intending to use the Confidential Material or Highly Confidential Material shall give the opposing Party reasonable and ample opportunity to comment on the manner and extent as to which the Confidential Material or Highly Confidential Material is being disclosed. Such appropriate steps shall include notification prior to the use of the Confidential Material or Highly Confidential Material at hearing of the intent to use the Confidential Material or Highly Confidential Material so as to allow the Parties to meet and confer in good faith on the use and manner of use of the Confidential Material or Highly Confidential Material, including discussion of all ways in which the disclosure of Confidential Material or Highly Confidential Material may be limited to the extent possible. Should Counsel use any Confidential Material or Highly Confidential Material at a deposition, the parties agree that the portion of any deposition transcript which discusses such Confidential Material or Highly Confidential Material shall be treated as Confidential Material or Highly Confidential Material, respectively, and such transcript portions may not be used at any hearing except as provided in this Order.

5. To the extent any party seeks to keep and maintain the confidentiality of Confidential or Highly Confidential Material at trial, such party may, in advance of trial, apply to the Court for such treatment along with a showing of good cause.

6. Objections and disputes regarding the treatment of documents or testimony designated as Confidential Material or Highly Confidential Material under this Protective Order shall comply with the procedures set forth in this Protective Order and with the applicable provisions of the Federal Rules of Civil Procedure (and all applicable Court rules) for Confidential Material or Highly Confidential Material of that type. Prior to bringing any motion, application or other proceeding regarding the treatment of documents or testimony designated as Confidential Material or Highly Confidential Material, the party seeking relief shall "meet and confer" as part of a good faith effort to resolve any dispute in accordance with Local Rule 37.

7. Nothing in this Protective Order shall prevent a Party from disclosing its own Confidential Material or Highly Confidential Material, or Confidential Material or Highly Confidential Material under its possession, custody or control, but this paragraph shall not affect any obligations a Party or Counsel may have apart from this Protective Order to maintain the confidential or privileged nature of Confidential Material or Highly Confidential Material in its possession, custody or control.

8. No party shall argue, question, or imply in any way, before a jury or other trier of fact, that the designation of any material as Confidential Material or Highly Confidential Material under this Protective Order is improper or suspicious or that any adverse inferences may be drawn from such designation.

9. This Protective Order shall be deemed binding and effective on the parties and their counsel as of June 10, 2011, and shall continue to be binding throughout and after the conclusion of this action, including any appeals. Upon final termination of this action, Counsel shall assemble and return all then-existing

1 Confidential Material and Highly Confidential Material and all copies of such Confidential Material and Highly Confidential Material (except for those submitted to the Court) to the person or entity producing such Confidential Material or Highly Confidential Material within thirty (30) days of the entry of the order on which such action is finally terminated.

10. No Party shall be deemed to have waived any objection to discovery of any Confidential Material or Highly Confidential Material or to have waived any other right, defense, or objection that otherwise may be interposed in this action, as a result of having agreed to be bound by this Protective Order.

11. Nothing in this Protective Order shall be deemed to address the issue of Defendants disclosing the names, contact information or disability information of any guest of Defendants who submitted a Guest Complaint Document, or of Plaintiffs contacting such guests. It is understood that Defendants have made a motion directed at resolving the dispute between the parties regarding this issue.

IT IS SO ORDERED.

DATED: 6/24/11

/s/
HON. FERNANDO M. OLGUIN

Respectfully submitted,

DRINKER BIDDLE & REATH LLP
By: */s/ David H. Raizman*
David H. Raizman
Elena S. Min

Attorneys for Defendants
Walt Disney Parks and Resorts U.S., Inc.
and Disney Online

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

# CERTIFICATE OF SERVICE
*Cari Shields, et. al. v. Walt Disney Parks and Resorts, etc., et. al.*
*USDC CASE NO. CV 10-5810-DMG (JEMx)*

**STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Drinker Biddle & Reath LLP, 1800 Century Park East, Suite 1400, Los Angeles, California 90067.

On **June 24, 2011**, I served the foregoing document described as:

## [PROPOSED] PROTECTIVE ORDER

on the interested parties in this action by transmitting a copy as follows:

| | |
|---|---|
| A. Anderson B. Dogali, Esq.<br>Lee WM. Atkinson, Esq.<br>Lindsay Galloway, Esq.<br>**FORIZS & DOGALI, P.A.**<br>4301 Anchor Plaza Parkway, Suite 300<br>Tampa, Florida 33634<br>(adogali@forizs-dogali.com)<br>(latkinson@forizs-dogali.com)<br>(lgalloway@forizs-dogali.com) | Eugene Feldman, Esq.<br>**EUGENE FELDMAN ATTORNEY AT LAW APC**<br>555 Pier Avenue, Suite 4<br>Hermosa Beach, California 90254<br>(genefeldman@mindspring.com) |

__X__ **By ELECTRONIC FILING** (I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel denoted on the above Service List.)

____ **By UNITED STATES MAIL** (I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.)

____ **By OVERNIGHT DELIVERY** (by causing such envelope to be delivered to the office of the addressee by overnight delivery via Federal Express or by other similar overnight delivery service.)

__X__ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **June 24, 2011**, at Los Angeles, California.

MARY T. AVILA
Name                                          Signature