Eugene Feldman (SBN 118497)
genefeldman@mindspring.com
EUGENE FELDMAN ATTORNEY AT LAW, APC
555 Pier Avenue, Suite 4
Hermosa Beach, California 90254
Telephone:   (310) 372-4636
Facsimile:    (310) 376-3531

Andy Dogali, Admitted *Pro Hac Vice*
adogali@forizs-dogali.com
FORIZS & DOGALI, P.A.
4301 Anchor Plaza Parkway, Suite 300
Tampa, Florida 33634
Telephone:   (813) 289-0700
Facsimile:    (813) 289-9435
*Attorneys for Plaintiffs and Class Plaintiffs*

[Additional Counsel listed on next page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DISTRICT

| | |
|---|---|
| CARI SHIELDS, AMBER BOGGS and TERESA STOCKTON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WALT DISNEY PARKS AND RESORTS US, INC., DISNEY ONLINE, INC., DOES 1-10, INCLUSIVE, <br><br> Defendants. | Case No.:  CV10-5810-DMG (FMOx) <br><br> Class Action <br><br> **JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR:  (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) LEAVE TO CONDITIONALLY FILE SECOND AMENDED COMPLAINT; AND (3) CONDITIONAL CERTIFICATION OF SETTLEMENT CLASSES** <br><br> Judicial Officer:    Hon. Dolly M. Gee |

1  DAVID H. RAIZMAN (SBN 129407)
   david.raizman@dbr.com
2  JAMES M. ALTIERI, Admitted *Pro Hac Vice*
   james.altieri@dbr.com
3  DRINKER BIDDLE & REATH LLP
   1800 Century Park East, Suite 1400
4  Los Angeles, California 90067-1517
   Telephone:   (310) 203-4000
5  Facsimile:    (310) 229-1285

6  Attorneys for Defendants Walt Disney Parks and
   Resorts U.S., Inc., and Disney Online
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    PROCEDURAL BACKGROUND ............................................................ 2

    A.   The Complaint and Removal ........................................................... 2

    B.   Class Certification ........................................................................... 3

    C.   Extensive Discovery ........................................................................ 4

    D.   Court-Ordered Mediation and Subsequent Settlement Discussions ...................................................................................... 5

    E.   Negotiations Lead to a Second Amended Complaint and the Motion for Conditional Certification of Realigned Classes ............... 5

    F.   The Settlement Agreement ............................................................... 8

III.   ARGUMENT .............................................................................................. 8

    A.   The Court Should Grant Preliminary Approval to the Proposed Settlement, Which Enhances Access to Members of the Settlement Classes to the Disney Parks and Disney Websites ............ 8

    B.   The Court Should Approve the Proposed Form and Method of Notice ........................................................................................... 22

IV.    THE COURT SHOULD GRANT LEAVE TO THE NAMED PLAINTIFFS TO FILE THE SECOND AMENDED COMPLAINT ........ 23

V.     THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES ..................................................................... 24

    A.   Numerosity ..................................................................................... 25

    B.   Common Questions of Law or Fact ............................................... 26

    C.   Typicality ....................................................................................... 27

    D.   Adequacy of Representation .......................................................... 29

    E.   Rule 23(b)(2) Requirements .......................................................... 30

VI.    CONCLUSION ........................................................................................ 30

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1099066.3

- 1 -

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS
RE SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prod. Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................. 30

*Armstrong v. Davis,*
  275 F.3d 849 (9th Cir. 2001) ................................................................... 28

*In re Beef Industry Antitrust Lit.,*
  607 F.2d 167 (5th Cir. 1979) ................................................................... 25

*Churchill Village LLC v. General Electric,*
  361 F.3d 566 (9th Cir. 2004) ................................................................... 22

*Dukes v. Wal-Mart,*
  131 S. Ct. 2541 (2011) ............................................................................. 26

*Gen. Tel. Co. of the Southwest v. Falcon,*
  457 U.S. 147 (1982) ................................................................................. 25

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ................................................... 20, 22, 26, 29

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ................................................................... 28

*Howey v. United States,*
  481 F.2d 1187 (9th Cir. 1973) ................................................................. 24

*Linney v. Cellular Alaska Partnership,*
  151 F.3d 1234 (9th Cir. 1998) ........................................................... 13, 25

*Mendoza v. Tucson Sch. Dist. No. 1,*
  623 F.2d 1338 (9th Cir.1980) .................................................................. 22

*Moeller v. Taco Bell Corp.,*
  220 F.R.D. 604 (N.D. Cal. 2004) ............................................................ 28

*Motion Picture Association of America, Inc., v. FCC,*
  No. 01-1149 (D.C. Cir. Nov. 8, 2002) .................................................... 12

*National Federation of the Blind v. Target Corp.,*
  452 F. Supp. 2d 946 (N.D. Cal. 2006) ............................................... 17, 18

*Navellier v. Sletter,*
  262 F.3d 923 (9th Cir. 2001) ................................................................... 24

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1099066.3

- 1 -

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS
RE SETTLEMENT

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) .................................................................. 2, 9, 18, 21

*Torrisi v. Tuscon Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) .................................................................................. 9

**STATUTES, RULES & REGULATIONS**

28 C.F.R. pt. 36, App. A, § 36.302(f) .............................................................. 27

28 C.F.R. pt. 36, App. B, § 36.302 ............................................................. 19, 27

28 C.F.R. pt. 36, App. B, § 36.303 ......................................................... 10, 12, 27

28 C.F.R. §§ 36.302(c)(4), (5), and ................................................................. 19

28 C.F.R. § 36.302(f)(1)(ii)(E) ......................................................................... 12

28 C.F.R. § 36.303 ............................................................................................ 27

28 C.F.R. § 36.304(d), 36 C.F.R. pt. 1191, App. B & D §§ 216.3, 703.5 ............. 11, 27

28 C.F.R. § 36.306 ...................................................................................... 12, 27

28 C.F.R. § 36.307, 28 C.F.R. pt. 36, App. B, § 36.307 ................................... 10

28 C.F.R. § 36.307 (a) ................................................................................ 11, 27

75 Fed. Reg. 43460-43467 (July 26. 2010) ..................................................... 17

76 Fed. Reg. 59307, 59308-12, 59314-17 (Sept. 26, 2011) ............................ 17

42 U.S.C. § 12102, and (b) ............................................................................. 6, 7

42 U.S.C. § 12182 (b)(2)(A)(iii) ..................................................................... 12

Advanced Notice of Proposed Rulemaking, 75 Fed. Reg. 43460-43467 ................... 28

CAL. CODE REGS. Title 24, §§ 1117B.5.1(2), 1117B.5.2, 1117B.5.3 and 1117B.5.4 ............. 11

Class Action Fairness Act, 28 U.S.C. §§ 1711 *et seq.* ................................... 23

Fed. R. Civ. P. 15(a)(2) .................................................................................... 23

Fed. R. Civ. P. 23(a) ........................................................................................ 25

Rule 15(a)(2) of the Federal Rules of Civil Procedure .................................... 23

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1099066.3

- 2 -

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS
RE SETTLEMENT

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Rule 23(e) of the Federal Rules of Civil Procedure ........................................................... 8

Rule 23 .......................................................................................................... 25, 26

Rule 23(b) ............................................................................................................. 3

Rule 23(b)(2) ............................................................................................. 22, 25, 30

Rule 23(b)(3) ...................................................................................................... 22

Rule 23(c)(2)(A) .................................................................................................. 22

Twenty-First Century Communications and Video Accessibility Act of 2010 ........................... 12

**OTHER AUTHORITIES**

Commerce and Supremacy Clauses of the U.S. Constitution ...................................... 17

http://www.ada.gov/qasrvc.htm .......................................................................... 19

http://www.nfb.org/NewsBot.asp?MODE=VIEW ..................................................... 18

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

LA01/ 1099066.3

- 3 -

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS
RE SETTLEMENT

# I.

# __INTRODUCTION__

Plaintiffs Cari Shields and Amber Boggs, on their own behalf and on behalf of the classes they represent (the "Named Plaintiffs"), and defendants Walt Disney Parks and Resorts U.S., Inc. ("WDPR") and Disney Online (collectively "Disney"), jointly submit this brief in support of their joint motion for preliminary approval of a class action settlement on the terms set forth in their Class Action Settlement Agreement and Release (the "Settlement Agreement"). As part of that settlement, the parties also seek leave to allow the Named Plaintiffs to file, conditioned on the Court's preliminary approval of the settlement, a Second Amended Complaint that properly captures the scope of the Settlement Agreement and the certification of four settlement classes to replace the five classes that this Court previously certified in this action, conditioned on the Court's final approval of the settlement.

The parties respectfully submit that the Court should preliminarily approve the proposed settlement because it is fair, adequate and reasonable. It will enhance existing access to Disney's theme parks in Florida and California, their attractions and amenities for class members (*i.e.*, guests with visual impairments) and will make Disney's related websites more readily accessible as Disney redesigns those websites in the coming years. The settlement will also provide class members with multiple means of accessing information about parade and show schedules and menus and purchasing tickets and making reservations online. The settlement also provides increased choices for class members with service animals to visit rides and attractions on which their service animals cannot ride, as well as enhanced assurances of access to all class members to parade viewing areas at Disney's theme parks and enhanced access to lockers and parking at the Disneyland Resort. This relief arguably exceeds legal requirements and will be effected faster and with less risk than it

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS RE.
SETTLEMENT

could be, if at all, through litigation.

The proposed settlement is the product of extensive negotiation, and reflects a considered and fully-informed exercise of judgment by the parties in light of their perception of their rights and the costs, delay and uncertainty of litigation. Consensual resolution of disputes of this nature has long been preferred, as the interested parties are in the best position to weigh the risks and benefits. To this end, judicial review of class settlements has been characterized as limited to determining whether the settlement is the product of fraud, overreaching or collusion and is, on the whole, fair adequate and reasonable to all concerned. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The settlement proposed here should be approved, as it more than meets this standard.

## II.

## PROCEDURAL BACKGROUND

### A.    The Complaint and Removal

This action was initially brought in the Superior Court of California for the County of Los Angeles on May 21, 2010, alleging discrimination against individuals with visual impairments visiting the Disney theme parks in California and Florida (collectively, the "Disney Parks").[1] That action was removed to this Court on August 5, 2010. Thereafter, a First Amended Complaint was filed alleging that defendants, in violation of federal and California law, denied members of ten national classes full use and enjoyment of the Disney Parks and their related websites.

---

[1] The "Disney Parks" at issue in this litigation are Disneyland and Disney California Adventure ("DCA") at the Disneyland Resort in California and Magic Kingdom, Epcot, Disney's Hollywood Studios and Disney's Animal Kingdom at the Walt Disney World Resort in Florida.

**B.**     **Class Certification**

In its June 29, 2011 Class Certification Order (Doc. No. 138) (the "Certification Order"), the Court granted in part and denied in part Plaintiffs' Motion for Class Certification, certifying five classes:

<u>Signage Class</u>:  all individuals with visual impairments who allegedly were, or in the future will be, denied access in the Disney Parks to signs, menus or schedules in reasonably alternative formats such as Braille or large print fonts;

<u>Kennel Class</u>:  all individuals with visual impairments who allegedly were, or in the future will be, deterred from visiting the Disney Parks out of concern that there might not exist reasonable relief areas for service animals;

<u>Companion Ticket Class</u>:  all individuals with visual impairments who allegedly were, or in the future will be, charged an additional entry ticket for a companion to accompany them in the Disney Parks.

<u>Parade Class</u>:  all individuals with visual impairments who allegedly in the past were, or in the future will be, denied access to preferential locations (reserved for wheelchair users) for parades in the Disney Parks, and

<u>Website Class</u>:  all individuals with visual impairments who allegedly in the past were, or in the future will be, denied equal access to the Disney Parks as a result of deficiencies in the accessibility of websites owned or operated by Disney.

In the same order, the Court declined to certify, in the form then alleged, four classes for failure to satisfy the numerosity requirements of Rule 23(b):

<u>Disney Character Class</u>:  all individuals with visual impairments who allegedly were, or in the future will be, denied equal interaction with costumed Disney characters;

<u>Locker Class</u>:  all individuals with visual impairments who allegedly were, or in the future will be, denied equal access to storage lockers in the

- 3 -

1   Disney Parks.

2       Map Class:  all individuals with visual impairments who allegedly were,

3   or in the future will be, denied access to Disney Parks maps in accessible

4   alternative formats such as Braille or large print; and the

5       Parking Class:   all individuals with visual impairments who allegedly

6   were, or in the future will be, denied access to the Disneyland Resort due to

7   alleged issues with respect to parking at that resort.

8       The Court also denied certification to the Kennel Class to the extent it

9   sought to include individuals allegedly deterred from attending the Disney

10  Parks because of Disney's charge of a kennel fee, or because of its policy

11  forbidding the unsupervised tethering of service animals.   It also denied

12  certification, on typicality grounds, of an Audio Description Device Class,

13  consisting of individuals who allegedly have used, or will attempt to use, a

14  personal data assistant device using proprietary Disney technology known as

15  Disney's Handheld Device (the "Handheld Device"), provided free of charge to

16  guests with various impairments for use in the Disney Parks.   The Court also

17  limited all certified classes to claims under federal law.

18      Finally, the Court appointed Forizs & Dogali, P.A. and Eugene Feldman,

19  Attorney At Law, APC as class counsel ("Class Counsel") and plaintiffs Cari

20  Shields, Amber Boggs and Teresa Stockton ("Plaintiffs") as class

21  representatives.[2]

22  **C.   Extensive Discovery**

23      Prior to class certification, the parties engaged in significant discovery

24

25  _____
    [2]    In October 2011, the Court granted Class Counsel's motion to
26  withdraw from the representation of Teresa Stockton.  When Ms. Stockton did not
    subsequently seek legal representation, she effectively conceded her status as a
27  class representative, leaving Cari Shields and Amber Boggs ("Named Plaintiffs")
    as the class representatives.  (Oct. 31, 2011 Minute Order (Doc. No. 168).)

28

and discussion of the merits of the claims alleged and relief sought. Named Plaintiffs, members of their families, and other individuals with visual impairments were deposed, as were numerous Disney employees involved in addressing concerns of individuals with visual impairments.

**D.   Court-Ordered Mediation and Subsequent Settlement Discussions**

On August 10, 2011, the parties engaged in a court-ordered, full-day mediation, which led to a tentative agreement on numerous issues, while a few key issues remained outstanding. Over the subsequent weeks, the parties gradually reached agreement on most of the basic terms and conditions. The process of converting that agreement into the Settlement Agreement uncovered a variety of issues that became the subject of further negotiations and eventually agreement.

**E.   Negotiations Lead to a Second Amended Complaint and the Motion for Conditional Certification of Realigned Classes**

During these negotiations, Plaintiffs indicated that, if the litigation were to proceed, they would explore the possibility of seeking Court certification of the uncertified classes based on newly-discovered evidence, and Disney indicated that it would not agree to any settlement that left unresolved the claims Plaintiffs had made on behalf of those uncertified classes. At the same time, the negotiations also revealed significant factual and legal overlap between and among both the certified and uncertified classes. For example, some of the relief proposed by Disney would enhance accessibility for members of both the certified Map Class and the uncertified Signage Class. Similarly, enhancements of the Handheld Device would enhance accessibility for members of the Map, Signage and Kennel Classes. As a result of these overlaps, the parties agreed that the classes should be re-aligned and certification sought for new classes covering not only members of the classes certified by the Court, but also of the classes that the Court declined to certify.

The negotiations also made it clear that Walt Disney Parks and Resorts Online ("WDPRO") had substantial responsibility for many of the issues identified in Plaintiffs' claims regarding the Disney Websites[3] and should be added as a defendant to this action and a party to the Settlement Agreement. WDPRO is the Disney entity with lead responsibility to effectuate any website-related accessibility enhancements agreed to in the Settlement Agreement. That being the case, the parties agreed that WDPRO should also be entitled to the finality achieved through the release and claim bar envisioned in the Settlement Agreement.

Finally, the parties agreed that WDPRO's work on the websites related to the Disney Parks would also need to be done in conjunction with related work on the Disney Cruise Lines website.

To serve all these ends, as part of a negotiated settlement, it was agreed that the Named Plaintiffs should file a Second Amended Complaint ("SAC") that realigned the classes, added WDPRO as a defendant, made express its allegations about the Disney Cruise Lines website, and dropped Teresa Stockton as a named plaintiff.[4]   The four reconstituted classes alleged in the SAC (the "Settlement Classes") are:

> (a)   The Website Class:  All individuals with visual impairments who (a) have a disability, as that term is defined in 42 U.S.C. §12102, and (b) have been or will be unable to gain equal

---

[3]   As used in this brief, the "Disney Websites" refer to the following websites whose accessibility will be enhanced under the Settlement Agreement: www.disneyland.com, www.disneyworld.com, www.disneycruise.com.

[4]   The moving parties understand that, should the Court grant leave to file the SAC, Ms. Stockton's individual claims in the First Amended Complaint would survive the SAC's filing.  Ms. Stockton has advised the moving parties that she does not object to preliminary approval of the settlement agreement, leave to amend the complaint or conditional certification of the restated Settlement Classes.

- 6 -

access to or enjoyment of one or more of the websites owned or operated by Disney such as www.disney.go.com, www.disneyland.com, www.disneyworld.com, and www.disneycruise.com as a result of their visual disability.

(b)   The Effective Communication Class:   All individuals with visual impairments who (a) have a disability, as that term is defined in 42 U.S.C. §12102, and (b) have been or will be denied equal access to or enjoyment of the Disney Parks because of (i) the absence of maps in an alternative format, or (ii) the absence of menus in an alternative format, or (iii) the absence of schedules of events at the Disney Parks in an alternative format, or (iv) inadequate or inconsistent operation of the audio description service on the Handheld Device, or (v) Disney's refusal to provide a free or discounted pass to their sighted companions, or (vi) the failure to be read, in full, the menus, maps or schedules of events at the Disney Parks.

(c)   The Service Animal Class:   All individuals with visual impairments who (a) have a disability, as that term is defined in 42 U.S.C. §12102, and (b) have been or will be denied equal access to or enjoyment of the Disney Parks because of (i) the fee charged for the use of a kennel for their service animal, or (ii) the absence of reasonably-designated service animal relief areas, or (iii) the absence of a location to kennel their service animal at attractions that do not allow service animals, or (iv) the lack of equal interaction with Disney employees who portray Disney characters because the individuals with visual impairments are accompanied by service animals.

(d)   The Infrastructure Class:   All individuals with visual

impairments who (a) have a disability, as that term is defined in 42 U.S.C. §12102, and (b) have been or will be denied equal access to or enjoyment of the Disney Parks because of (i) physical barriers to access, or (ii) the lack of reasonable modifications to Disney's policies and practices to permit such equal access or enjoyment.  Among other things, the members of this class have been or will be denied equal access to or enjoyment of the parade viewing areas at the Disneyland Resort and the Walt Disney World Resort, and to public lockers, or parking lots at the Disneyland Resort.

(Proposed SAC, Ex. D to Settlement Agreement ¶ 18.)

## F.   **The Settlement Agreement**

After formulating and agreeing on a detailed term sheet, the parties undertook the effort to reduce their understanding to a comprehensive Settlement Agreement and to prepare the papers necessary to seek Court approval of such a settlement.  The proposed settlement resolves the claims and defenses asserted in the litigation or covered by the Settlement Agreement in a way that avoids the cost and risk of further litigation and provides fair, adequate and reasonable modifications and assistive measures to enhance access to the Disney Parks and the Disney Websites by individuals with visual impairments.  For these reasons, articulated more fully below, the Court should grant the parties' joint motion for preliminary approval of the class action settlement, and for conditional certification of the Settlement Classes.

## III.

## ARGUMENT

**A.   The Court Should Grant Preliminary Approval to the Proposed Settlement, Which Enhances Access to Members of the Settlement Classes to the Disney Parks and Disney Websites**

Although Rule 23(e) of the Federal Rules of Civil Procedure requires

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS RE.
SETTLEMENT

judicial approval of any class action settlement, where, as here, a settlement is the result of arms-length negotiation involving approved class representatives and experienced counsel, it should be approved if it is fundamentally fair, adequate and reasonable as a whole. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). This determination, while committed to the sound discretion of the Court, is to be made with deference to the judgment of the class representatives and their counsel, as "the court's intrusion upon what is otherwise a private consensual agreement between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* In turn, the "fairness" of a settlement turns on balancing several factors, including claim strength, what is offered in settlement, the stage of the proceedings and extent of discovery, the risk, expense, complexity and likely duration of further litigation, and the views and experience of counsel. *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

Here, all of these factors weigh in favor of approving the proposed Settlement Agreement. The Settlement Classes are represented by experienced class counsel and knowledgeable class representatives, facts on which this Court already passed in issuing its class certification order. The terms of the settlement are the product of extensive discovery and protracted, arms-length negotiations that provided ample opportunity for the parties and their counsel to become familiar with the facts and the law and evaluate the strengths and weaknesses of their claims. This process has led to agreement on the terms now submitted to the Court for approval and summarized briefly below.

### 1.    The Effective Communication Class Claims

The settlement provides practical means for members of the Effective

- 9 -

Communication Class to gain enhanced access to a variety of information sources about the Disney Parks.  For example, the Settlement Agreement provides for a telephone service that will, upon request, read and answer questions about menus for restaurants at the Disney Parks and about parade and show schedules at the Disney Parks.  The telephone service will be maintained until this same information becomes become available on the next generation of the Handheld Device or is posted on the www.disneyland.com or www.disneyworld.com websites in screen-readable format.  An existing audio-recording that provides the schedule for major entertainment offerings at Disneyland and DCA will remain available.

With respect to menus, the Settlement Agreement also requires Disney to maintain and reinforce adherence to its current policy that employees read menus upon request to the extent requested by individuals with visual impairments.  In addition, Disney has agreed to make certain menus available on the next generation of the Handheld Device and to make sample Braille menus available at four popular restaurants in each of the Disney Parks.

These undertakings will provide individuals with visual impairments a variety of additional means to access schedule and menu information.  Disney maintains that this relief exceeds what could be compelled by law, as its existing practice of having employees read schedules and menus upon request not only satisfies the ADA, but is cited in the ADA regulations itself as an acceptable practice.  *See* 28 C.F.R. § 36.307, 28 C.F.R. Pt. 36, App. B, § 36.307.  *See also* 28 C.F.R. Pt. 36, App. B, § 36.303 (within range of effective aids, ultimate decision as to what measures to take rests with public accommodation).

The same is true with respect to the demand for more information about orienting guests with visual impairments when visiting the Disney Parks.  Disney has agreed that, in addition to the numerous auxiliary aids already

- 10 -

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS RE.
SETTLEMENT

available at the Disney Parks (including a Braille Guide, stationary Braille maps, an Audio Guide, an Audio Tour and descriptive location information on the Handheld Device), it will ensure that there are two stationary Braille maps, as well as portable Braille maps for loan, for each Disney Park.  Disney has also agreed to continue to evaluate the provision of further location information through the Handheld Device, which, as a result of other provisions of the settlement, will be enhanced to provide information on the location of service animal relief areas.

The ADA Accessibility Guidelines ("ADAAG") state that signs that provide direction to, or information about, functional spaces of a building need not be in Braille, but must only satisfy criteria such as letter size and color contrast.  28 C.F.R. § 36.304(d), 36 C.F.R. Pt. 1191, App. B & D §§ 216.3, 703.5.  In fact, the ADAAG standard provides, as specific examples of types of signs **_not_** required to be in Braille, "building directories, menus, seat and row designations in assembly areas, occupant names, building addresses and company names and logos."  California's regulations make similar distinctions. *See* CAL. CODE REGS. tit. 24, §§ 1117B.5.1(2), 1117B.5.2, 1117B.5.3 and 1117B.5.4 (directional and informational signage about functional spaces of a building or site need not be in Braille).  Disney maintains that a map is no different conceptually than a building directory, which the regulations expressly exclude from any Braille requirement, even if the place of public accommodation provides a print directory.  28 C.F.R. § 36.307 (a).  Given the extent of the information already available and the threshold question as to the legal basis for compelling anything more, Disney maintains that the substantial relief provided with respect to map and location information is more than adequate to address the concerns of members of the Effective Communication Class.

Disney also disputes that there is legal basis for compelling modifications

- 11 -

to the current Handheld Device.   The ADA "does not require a public accommodation to provide its customers, clients or participants with personal devices, such as wheelchairs, individually prescribed devices, such as prescription eyeglasses or hearing aids[.]").   42 U.S.C. § 12182 (b)(2)(A)(iii); 28 C.F.R. § 36.306.   *See also* DOJ Preamble, *reprinted* at 28 C.F.R, Pt. 36, App. B, § 36.303 (auxiliary aid regulation "does not require public accommodations to provide assistance to individuals with impairments that is unrelated to effective communication[.]").   When configured for individuals with visual impairments, the current version of the Handheld Device provides descriptive narration that describes what the user would see if they could see an attraction or an outdoor area of a Disney Park.   Disney maintains that Congress, regulatory agencies and the courts have all recognized that descriptive narration is not a required auxiliary aid or service, as it requires the production of a separate creative work.   *See Motion Picture Association of America, Inc., v. FCC*, No. 01-1149 (D.C. Cir. Nov. 8, 2002)(striking down FCC's effort to mandate creation of video description materials absent specific Congressional authorization); Twenty-First Century Communications and Video Accessibility Act of 2010, Public Law 111-260, 111th Congress (Oct. 8, 2010) (granting FCC limited power to require some broadcasters to provide video description on a trial basis).

Finally, a predicate of the claim for free or reduced price tickets for sighted companions is the assumption that companions compensate for communications deficiencies at the Disney Parks.   Not only does Disney dispute the existence of any such deficiency, to the extent there was such a deficiency, it would be substantially remedied by relief provided in the settlement.   Moreover, there is also a dispute whether there is any legal authority to compel Disney to give free passes to sighted companions of guests with visual impairments.   Disney maintains that the ADA permits companions

to purchase admission together with a person with disabilities "[u]nder the same terms and conditions as other tickets sold for the same event. . . ." 28 C.F.R. § 36.302(f)(1)(ii)(E).  Disney also contends that there is no construction of "under the same terms and conditions" that yields a "two for the price of one" result.  Nevertheless, as part of the settlement, Disney will distribute, through a not-for-profit organization that serves members of the Effective Communication Settlement Class, 100 one-day passes to the Disney Parks at the Disneyland Resort, and 100 one-day passes to the Disney Parks at the Walt Disney World Resort.  Moreover, the Named Plaintiffs have acknowledged that accessibility enhancements promised as part of the settlement, such as the expanded maps, menus, schedules and Handheld Device, diminish the universal need of Effective Communication Class members to be accompanied by a sighted companion when visiting the Disney Parks.

For their part, Named Plaintiffs dispute the applicability or interpretation of many of the authorities cited above, and have argued vigorously that the relief they seek could be obtained through litigation and that providing such relief is viable and could be done without unduly burdening Disney.  Yet, each side recognizes and wishes to avoid the risk, expense, and delay associated with further litigation of these issues, particularly when Disney is pleased to further enhance the accessibility of the Disney Parks to its guests with visual impairments.

Proposed settlements are not judged against a hypothetical or speculative measure of what might have been achieved, as litigation is, by its nature, uncertain, and "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations omitted). The proposed settlement achieves a fundamentally fair, adequate and reasonable resolution of the Effective Communication Class claims.

## 2. The Website Claims

The settlement enhances and facilitates access for individuals with visual impairments to the Disney Websites to a greater extent and far faster than Disney contends that it could be mandated (if at all) through litigation. Resolving the website claims has required significant give and take between the parties, their experts and their counsel with respect to what is practical, possible, feasible, desirable, needed and/or required.   Nearly all of this accessibility enhancement work will be performed as part of a broader redesign of the Disney Websites that Disney proposes had otherwise been scheduled to roll out over the next several years.

Making the Disney Websites accessible to individuals with visual impairments is a mammoth undertaking, as each website contains thousands of individual pages, and rendering website pages accessible is predominantly an individual, manual process.  A significant part of the negotiations concerned how ongoing efforts to make the Disney Websites accessible to individuals with visual impairments should be prioritized, as these efforts will continue long after this litigation is concluded, as the websites are ever-changing both as to their content and technology.  Prioritization concerns led to the inclusion of www.disneycruise.com (the Disney Cruise Lines website) in the settlement, in order to coordinate revision of that site with the work on www.disneyworld.com and www.disneyland.com.

Disney proposes that "fully accessible" is more a question of opinion than fact.  The Disney Websites pose unique problems as they promote resorts with visually-intensive amenities and attractions based on themes and characters from even more visually-intensive works.  In some instances, this material simply cannot be made fully-accessible to many members of the Website Class.  In others, the amount of information on a page is so great that full accessibility would be undesirable.   In such instances, functionality

requires judgments as to practicality, not merely mechanical application of technical standards.  Reflecting the inherently practical and evolutionary nature of the process, the settlement addresses accessibility at a variety of levels, as summarized below.

Disney will adopt a policy of making the Disney Websites accessible to all individuals, including those with visual impairments.  This policy will not only be publicized internally, but also communicated to outside contractors and integrated into any future contracts for work on the websites by such contractors.  The cornerstone of the compliance process is, subject to certain exceptions, adoption of the WCAG 2.0 standard at Level A, with a commitment to strive, where practical, to meet Level AA guidelines and, in some instances, Level AAA guidelines.  The exceptions relate to content provided by users of the Disney Websites or other third parties, third-party sites accessible through those websites, content about the Disney Parks or Disney Cruise Line contained on third-party websites, live webcasts and short-term marketing sites or pages available for less than four months.

The settlement also specifies procedures to define compliance and detect and correct pages that are non-compliant or, while technically compliant, present functionality problems.  The compliance provisions involve electronic testing tools to initially test and periodically monitor compliance.  This process also includes periodic website audits to monitor compliance, including both electronic testing and human testing involving at least one individual with visual impairments.  Disney will also make available a means to register complaints about accessibility of the sites, and procedures for prioritizing remediation of non-compliance.

The settlement provides assurances of accessibility of various portions of the Disney Websites by dates in the future, usually at the same time that the newly-designed portions of the Disney Websites are made available to the

- 15 -

public.  Some of these dates are:

- by December 31, 2012, users utilizing screen-readers will be able to access a majority of the content-related pages and all menus currently posted on www.disneyworld.com, as well as sample menus for all table service and quick service restaurants at the Disney Parks at the Walt Disney World Resort.

- by July 2013, users utilizing screen-readers will be able to purchase tickets, passes, rooms and packages for company-owned properties at the Walt Disney World Resort on www.disneyworld.com, and the same information accessible on that site with respect to the Walt Disney World Resort will be available in an accessible format on www.disneyland.com with respect to the Disneyland Resort.

- by June 30, 2014, users utilizing screen readers will be able to use www.disneyland.com to purchase tickets, passes, rooms and packages for company-owned properties at the Disneyland Resort.

- by December 31, 2015, similar compliance is required with respect to www.disneycruise.com.

While these upgrades are in progress, a 24-hour telephonic service that will be publicized solely to users of screen-reading software will be available to assist individuals with visual impairments who would otherwise attempt to use www.disneyland.com and www.disneyworld.com to instead purchase tickets and passes and book hotel rooms.

The parties believe these provisions will permit individuals with visual impairments to access the goods and services made available through the Disney Websites.  The fairness of the settlement is underscored not only by the scope of what is provided and the difficulty of providing it, but by debate as to

whether there is any basis for mandating website accessibility.  Disney also disputes whether the *Target Corp.*[5] decisions on which Named Plaintiffs rely correctly interpret the ADA and analogous California statutes.  Disney also maintains that relief under California statutes is preempted by the Commerce and Supremacy Clauses of the U.S. Constitution.

Moreover, the *Target Corp.* litigation was settled without resolution on the merits of what "accessible" means or the manner or extent to which accessibility compliance can be measured or enforced.  As a result, these issues are in uncharted legal territory.  Since *Target Corp.*, two different federal agencies charged with making commercial services available to individuals with impairments have hesitated to mandate website accessibility.  The Department of Justice declined to adopt ADA website regulations in 2008, and in 2010 merely solicited comments on this subject.  Advanced Notice of Proposed Rulemaking, Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460-43467 (July 26. 2010).  The Department of Transportation, charged with making air travel accessible to individuals with impairments, also declined to adopt website regulations in 2008, and only recently issued a proposed notice of rulemaking addressing airline websites that also includes requests for further comments on specific issues such as cost, feasibility and timing for mandating compliance. Supplemental Notice of Proposed Rulemaking, Nondiscrimination on the Basis of Disability in Air Travel: Accessibility of Web Sites and Automated Kiosks at U.S. Airports, 76 Fed. Reg. 59307, 59308-12, 59314-17 (Sept. 26, 2011).  In each instance, the agencies cited the same practical concerns wrestled with by

---

[5]       *National Federation of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 956 (N.D. Cal. 2006); 582 F. Supp. 2d 1185, 1205 (N.D. Cal. 2007).

the parties here and that have caused, by one measure, 90% of federal agency websites to fail to comply with a 1998 Congressional mandate that they be accessible.  *See* http://www.nfb.org/NewsBot.asp?MODE=VIEW&ID=801.

All these factors suggest to Disney that *Target Corp.* underestimated the difficulty of even defining accessibility, let alone formulating enforceable mandates to achieve it.  Requests for prospective judicial relief in a policy-laden area in which two expert federal agencies have declined to tread also implicate questions of comity between the branches of government.  Litigating these issues would involve risk to both parties and consume substantial time, cost and effort.  There is no assurance that this effort would result in any benefit beyond what the parties, with advice of experienced counsel and experts and intimate knowledge of the issues involved, are now prepared to accept.  As the Ninth Circuit has cautioned, "it must not be overlooked that voluntary reconciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation" involving discrimination claims.  *Officers for Justice*, 688 F.2d at 625.  Given the substantial benefits provided to the class, the uncertainties of litigating the merits, and the difficulty of formulating effective and achievable relief, the proposed settlement achieves a fundamentally fair, adequate and reasonable resolution of website claims.

Named Plaintiffs dispute the applicability or interpretation of many of the authorities cited above, including Disney's efforts to undermine the precedential value of the *Target* decision, and would offer numerous arguments and authorities to the contrary if the litigation were to continue in the absence of an approved settlement.  Yet, each side recognizes and wishes to avoid the risk, expense, and delay associated with further litigation of these issues, particularly when Disney is pleased to further enhance the accessibility of the Disney Websites to individuals with visual impairments.

LA01/ 1099066.3

### 3.   The Service Animal Class Claims

The Settlement Agreement also provides enhanced services and options for members of the Service Animal Class, who typically use a service animal when visiting any of the Disney Parks.   Disney will provide additional and enhanced areas for service animals to relieve themselves and offers temporary kenneling for service animals at those few attractions on which, for safety reasons, the service animals cannot ride.   The Settlement Agreement also addresses the allegation that costumed characters may on occasion shy away from interaction with guests accompanied by service animals.   As set forth below, these allegations concern issues where Disney has agreed to enhance services for its guests, despite its doubts that enhanced services are required.

For example, the desire for *additional* service animal relief areas, in addition to those *already* provided, appears at odds with the Department of Justice's advice to places of public accommodation that "[t]he care or supervision of a service animal is solely the responsibility of his or her owner. You are not required to provide care or food *or a special location* for the animal."   "Commonly Asked Questions About Service Animals in Places of Business," reprinted at http://www.ada.gov/qasrvc.htm (emphasis added); *see also* 28 C.F.R. Part 36, App. B, § 36.302.   Settlement negotiations, however, identified issues with some of the existing relief areas that were not in public areas, and unfamiliarity of some Disney Parks' employees with service animal procedures.

Similarly, Disney contends that the demands for temporary kennels or permission to leave service animals unattended while their owners ride attractions that service animals cannot ride appear to conflict with ADA regulations providing that "[a] service animal shall be under the control of its handler," and that "[a] public accommodation is not responsible for the care or supervision of a service animal," 28 C.F.R. §§ 36.302(c)(4), (5), and that "[i]f

a service animal must be separated from an individual with a disability in order to avoid a fundamental alteration or a threat to safety, **it is the responsibility of the individual with the disability to arrange for the care and supervision of the animal** during the period of separation." DOJ Preamble, *reprinted* at 28 C.F.R. Part 36, App. B, § 36.302 (1991) (emphasis added).

The Named Plaintiffs contest the accuracy, applicability and interpretation of the above citations of authority, and have consistently argued that the relief they seek is required as a matter of law or fact. The Named Plaintiffs do not intend to turn this Joint Motion into an extended narrative to both sides' arguments which, in the absence of a settlement, would ultimately be made to the Court at trial. Rather they prefer to simply submit for the Court's approval the parties' Settlement Agreement, through which the parties, rather than continuing to incur the risk, time and expense of litigating this issue, have opted to reach a compromise through which Disney will address the overarching practical concern of what to do when a service animal cannot ride a specific attraction for safety reasons.

In particular, Disney's Operating Guidelines for custodial staff and employees working in areas adjacent to designated service animal relief areas will be enhanced to better educate those employees regarding those relief areas and policies. In addition, Disney will designate at least three service animal relief areas a public area in each Disney Park and continue to allow service animal relief in any open area of the Disney Parks. It will also provide information about the location of relief areas on the various information sheets available to guests, on the new mobile Braille maps, and on the current Handheld Device.

Finally, Disney will also provide information on the applicable Disney Websites and on various information sheets on its existing policy, at attractions at which service animals cannot ride, of allowing guests with service animals to

- 20 -

leave such service animals with another member of the guest's party and to permit the guest or individual temporarily handling the service animal to exchange places with the guest who has just taken the ride or attraction. Disney will also make available temporary kennels at those attractions at which animals cannot ride. The proposed settlement achieves a fundamentally fair, adequate and reasonable resolution of the Service Animal claims. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (approving settlement where there "was no guarantee that the class would receive a better deal.").

### 4. The Infrastructure Class Claims

The settlement also resolves a number of allegations concerning elements of the Disney Parks' infrastructure and related procedures. Without Disney, in any way, conceding the legal or factual basis for these claims, the steps necessary to address the infrastructure concerns are straightforward and do not warrant further litigation. Disney has agreed to modify the applicable Operating Guidelines to clarify that parade viewing areas reserved for individuals with impairments are also available to individuals with visual impairments. Disney has also reviewed these areas for ambient noise level issues and has considered Named Plaintiffs' input in that review. At the Disneyland Resort, it will install five keyed lockers for use by members of the Infrastructure Class at each of Disneyland and DCA and designate the requisite number of disabled parking spaces at that resort's Pinocchio Lot, and provide the requisite path of travel between that lot and the tram loading/unloading area. These terms reflect the Ninth Circuit's recognition that any consensual resolution of a class action involves provisions that "will be less than what some class members feel they deserve, but, conversely, more than defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Officers for Justice*, 688 F.2d at 628.

### 5.    Overall Fairness, Adequacy and Reasonableness

Finally, while the proposed settlement provides meaningful relief to all class members as to each claim, fairness of a settlement is not judged on so fine a scale.   As the Ninth Circuit has made clear, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628.  The "full package" here provides substantial benefits to the Settlement Classes in return for the closure provided by the release of Disney from liability for any and all claims which could have been brought in this action or that relate to the relief provided in the settlement.

The settlement will result in enhanced accessibility of the Disney Websites and alternate means of access to website functions while upgrades of the websites are in progress.   The primary concern of the Effective Communication Class, access to schedule and menu information, has been addressed by providing that such information be available in Braille, *and* read upon request, *and* be available through a telephone service *and* made available in accessible form on www.disneyworld.com and www.disneyland.com *and* on the Handheld Device.  The other communication concerns have been addressed with more stationary Braille maps, portable Braille maps, and more location information on the Handheld Device.  The settlement meets the main Service Animal Class demand for clearly designated relief areas and a means of riding, with other members of their party, attractions on which service animals cannot ride, and also addresses parking, locker and parade infrastructure concerns.

These remedies are merely highlights, not an exhaustive list, but even if limited to these highlights, the settlement terms are fundamentally fair, adequate and reasonable.   "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*,

- 22 -

150 F.3d. at 1027.  Judged on this standard, the settlement is more than worthy of approval.

**B.**     **The Court Should Approve the Proposed Form and Method of Notice**

Courts have a wide degree of discretion in requiring notice of settlement of class claims certified under Rule 23(b)(2), as Rule 23(c)(2)(A) merely provides that "the court may direct appropriate notice to the class."  Even in the more demanding context of a Rule 23(b)(3) opt-out class, notice is sufficient if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), *quoting Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980).

The proposed Notice, appended as Exhibit A to the Settlement Agreement, more than meets this standard.  It informs class members of the general terms of a complex settlement, advises them of their right to object at the final approval and fairness hearing, and instructs them how to do so.  It also discloses Class Counsel's fee request and Named Plaintiffs' request for service payments.  In addition to Disney satisfying the notice requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711 *et seq.*, Class Counsel will provide, by e-mail or otherwise, a copy of the Notice to each individual with visual impairments known by Class Counsel to have expressed concern about treatment at the Disney Parks or on the Disney Websites.  Disney, in turn, will seek to publish the Notice in regularly circulating publications of the National Federation of the Blind, the American Council of the Blind, the American Foundation for the Blind, and the Los Angeles Radio Reader Service.  Given the nature of the claims and composition of the Settlement Classes, and their use of and reliance on non-traditional media for their news and information, these are sufficient and appropriate means of providing notice.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTIONS RE. SETTLEMENT

# IV.

## THE COURT SHOULD GRANT LEAVE TO THE NAMED PLAINTIFFS
## TO FILE THE SECOND AMENDED COMPLAINT

Rule 15(a)(2) of the Federal Rules of Civil Procedure mandates that leave to amend a pleading should be given *either* "with the opposing party's consent or the Court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added). "The court should freely give leave when justice so requires." *Id.* Each of these independent bases support this motion.

Here, the parties have jointly moved for leave to amend the Complaint, thus signifying the opposing parties' (Disney's) consent. Therefore, neither party claims prejudice by the proposed amendments to the Complaint. In fact, the proposed amendments are a material part of a comprehensive settlement of this action, and both the Named Plaintiffs (and the classes they represent) and Disney will benefit from said amendments.

Of course, the Court's leave-granting discretion is sought here because the motion is made after the deadline set by the Court for any such amendment. (Aug. 26, 2011 Scheduling Order (Doc. No. 162).) But, unless a proposed amendment will result in undue prejudice to the opposing party, a trial court should grant leave to amend, even as late as the second day of trial and where the party seeking amendment cannot account for the delay in doing so. *Howey v. United States*, 481 F.2d 1187, 1190-1191 (9th Cir. 1973). As explained above, leave to amend will not prejudice the parties and will promote judicial economy by advancing the settlement of this action. Moreover, this is not a circumstance where the late amendment impacts any of the Court's case management concerns because it is not anticipated that the amended pleading (the Second Amended Complaint) will be the subject of active litigation. Accordingly, the parties respectfully request that the Court grant Named Plaintiffs leave to file the Second Amended Complaint.

# V.

## THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASSES

As part of the settlement, the parties also seek certification of the Settlement Classes conditioned on final approval of the settlement.  As the Court noted in its June 29, 2011 Certification Order, district courts enjoy broad discretion in class certification determinations, *see Navellier v. Sletter*, 262 F.3d 923, 941 (9th Cir. 2001), so long as the following criteria are met:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).   Where classwide injunctive relief is sought, Rule 23(b)(2) further requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class[.]"   These criteria are satisfied here.

The Class Certification Order poses no impediment to certification of the reconstituted Settlement Classes.  Class certification decisions are interlocutory and can be altered and amended in light of subsequent developments, *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), particularly where those developments remove impediments to settlement.  *See, e.g., In re Beef Industry Antitrust Lit.*, 607 F.2d 167, 178 (5th Cir. 1979).  Here, the Settlement Classes satisfy Rule 23 and are defined in ways that address the Court's prior concerns with respect to certification issues.  *See Linney*, 151 F.3d at 1237 (additional class counsel remedied conflict which impeded prior class

- 25 -

certification).

## A.     Numerosity

Each of the Settlement Classes satisfies numerosity requirements, as each subsumes at least one class previously found by the Court to be sufficiently numerous to certify.  The proposed Effective Communications Class subsumes the certified Signage and Companion Ticket classes.  The Website Class was already adjudged sufficiently numerous and grows even more with the explicit addition of claims concerning www.disneycruise.com.  Likewise, the Service Animal Class subsumes the certified portion of the Kennel Class, and the Infrastructure Class subsumes the certified Parade class.

Moreover, the Service Animal class is defined to address the concerns that led the Court to deny certification of Kennel Class claims beyond service animal relief areas.  Virtually every guest visiting the Disney Parks with a service animal may, at some point, want to ride an attraction on which service animals cannot ride.  The Court indicated it might have viewed differently a class defined in terms of this underlying problem, but denied certification due to doubts it could compel the specific relief of unsupervised tethering or crating.  (Certification Order at 19-20.)  The ability to compel this remedy, however, no longer controls numerosity, as Disney is not being *compelled*, but is *agreeing* to provide a crating option as part of a settlement that otherwise addresses Named Plaintiffs' concerns by clarifying the availability of the "child switch" procedure for guests with service animals.

Finally, while the Infrastructure Class embraces not only the previously-certified Parade class, but also the uncertified Locker and Parking classes, the current grouping of these claims is appropriate for settlement purposes.  The Infrastructure Class claims all concern physical aspects of the Disney Parks that are desirable to the general public but problematic for individuals with visual impairments.  The same class members who may encounter difficulties viewing

JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT MOTIONS RE.
SETTLEMENT

parades also may encounter problems on their way to the parade at the Disneyland parking lot or while attempting to use lockers to store personal effects.  While this might in theory (but not in practice) impact typicality, the Infrastructure Class is sufficiently numerous to satisfy Rule 23.

**B.      Common Questions of Law or Fact**

As the Court has stated, commonality merely requires that there must be one common legal or factual issue whose resolution will resolve an issue central to the validity of each claim of a class.  (Certification Order at 21-22, citing *Dukes v. Wal-Mart*, 131 S. Ct. 2541 (2011); *Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient[.]").  Here, the Effective Communication Class claims all implicate the Named Plaintiffs' claims that they are entitled to reasonable, efficient and accessible communication of information, through accommodations such as auxiliary aids, signage, maps, and operating procedures.  Likewise, the claims commonly implicate Disney's alleged defenses that such claims are barred by 28 C.F.R. §36.303, *see also* 28 C.F.R. Pt. 36, App. B § 36.303, which provides that individuals with impairments do not have the right to an auxiliary aid or service of their choice, as long as the communication provided is effective. The Effective Communication Class claims related to signage, maps and the Handheld Device all commonly implicate Disney's defense alleging a distinction under the ADA between Braille being required for certain informational, but not directional, signage.  *See, e.g.*, 36 C.F.R. Pt. 1191, App. B & D §§ 216.3, 703.5.  Disney's obligation to provide such information, and the ability of the class members to enjoy the Disney Parks without it, are also common questions relevant to the companion ticket claims.  The Court has already found that the certified Website Class, which is co-extensive with this Website Class has common questions of fact or law.

All Service Animal Class claims share the issue of whether Disney adequately accommodates visually-impaired guests who are accompanied by service animals, along with Disney's defense alleging that the claimed relief is barred by ADA regulations providing that places of public accommodation are not required to assume care or supervision of a service animal or provide a special location for such an animal. *See* 28 C.F.R. Part 36, App. B, § 36.302, *reprinted at* 75 Fed. Reg. at 56270. Finally, the Infrastructure Class claims all involve common factual issues concerning the extent to which visual impairments create a need for procedural or infrastructure modifications to physical aspects of the Disney Parks. They also share a common legal question concerning the extent modifications can be compelled despite regulations that Disney contends establish that a place of public accommodation has to provide access, but not services of a personal nature, to an individual with a disability, and is not required to stock special goods designed for individuals with disabilities. 28 C.F.R. § 36.307 (a); 28 C.F.R. § 36.306; *ADA Title III Technical Assistance Manual* § III-4.2600; 28 C.F.R. Pt. 36, App. A, § 36.302(f).

## C.   Typicality

Rule 23's permissive standard for typicality is satisfied so long as Named Plaintiffs have injuries similar to those of the unnamed class members that result from the same course of conduct. There is no requirement that the claims of the representatives and class members be identical. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). With respect to the Effective Communication Class, Named Plaintiffs allege difficulties common to any individual with visual impairments, and neither their claims nor the relief provided in the settlement is tailored to a particular level of disability. Indeed, the settlement provides for information to be available in a variety of formats that can be utilized by

individuals with a range of visual impairments and different preferences for how to access information about what goods and services will be available in the Disney Parks, at what time, and in what place.

As the Court has found, Named Plaintiffs' claims are typical of those of individuals with visual impairments who want to access www.disneyworld.com, or www.disneyland.com. (Certification Order at 31.) Named Plaintiffs' experiences with www.disneycruise.com mirror those concerns, which also mirror general comments received by the Department of Justice with respect to website accessibility. *See, e.g.*, Advanced Notice of Proposed Rulemaking, 75 Fed. Reg. 43460-43467 (July 26, 2010) (discussing and requesting comments). They are also typical of claims any individual with visual impairments would raise with respect to locating areas for a service animal to relieve itself, or attractions on which service animals are not permitted or costumed characters that might shy away from service animals. Similarly, there is nothing about Named Plaintiffs or their claims that would differ from other class members who want to attend a parade, use a locker or park at the Disneyland Resort. While the parties may dispute whether any Service Animal or Infrastructure issues exist, to the extent they do exist, Named Plaintiffs' claims would be typical. *See, e.g., Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) (typicality satisfied where proposed class used different mobility aids but experienced the same effects from alleged barriers and policies).

### D.   **Adequacy of Representation**

The Court has already found that Named Plaintiffs have no interests antagonistic to other potential class members and that class counsel are experienced and without conflict. (Certification Order at 33); *Hanlon*, 150 F.3d at 1020 (describing standard for adequacy of representation). Nothing has changed since that determination. While the Settlement Agreement provides

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTIONS RE. SETTLEMENT

for incentive payments to the Named Plaintiffs, those payments are the subject of a separate judicial submission. The same is true of Class Counsel's fee award. Named Plaintiffs have played a large role in the vigorous pursuit of this litigation. Because of their frequent utilization of the Disney Parks, they have an intimate and broad-ranging familiarity with how individuals with visual impairments are affected by their particular characteristics and by the Disney Websites. Also, as the Court has found, Named Plaintiffs:

> Have (1) met with counsel before this suit was filed; (2) reviewed and executed contingency fee agreements; (3) reviewed and provided comments to their attorneys on the original complaint before it was filed; (4) worked with their families to retrieve documents and provide them to counsel to use in responding to requests for production; (5) agreed to allow their personal information to be used to support the class allegations; (6) participated in numerous telephone conferences and correspondence with their attorneys regarding case status, interrogatories, requests for production, depositions, and in preparation for settlement negotiations should they occur; and (7) prepared, reviewed, revised and executed responses to interrogatories.

(Certification Order at 32-33.) This participation has continued unabated through the settlement process.

## E.   Rule 23(b)(2) Requirements

Finally, for classes to be certified under Rule 23(b)(2), "the party opposing the class [must have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, if Named Plaintiffs are entitled to a particular form of relief

- 30 -

under a class claim, all of the members of that class would be entitled to that relief.  Indeed, a key characteristic of the Settlement Classes is that the relief sought is defined in terms of actions to be taken to ameliorate underlying problems experienced in common by class members.  Such civil rights actions seeking only injunctive relief are prime examples of actions satisfying Rule 23(b)(2).  *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## VI.

## CONCLUSION

For the reasons set forth above, the parties respectfully request preliminary approval of the proposed Settlement Agreement, that leave be granted for Named Plaintiffs to conditionally file the Second Amended Complaint and that the Settlement Classes be certified conditioned on final approval of the settlement.

Dated:     April 23, 2012                    Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By:   /s/ David H. Raizman
          David H. Raizman

Attorneys for Defendants
Walt Disney Parks and Resorts U.S., Inc. and Disney Online

Dated:     April 23, 2012                    FORIZS & DOGALI, P.A.

EUGENE FELDMAN ATTORNEY AT LAW, APC

By:   /s/ Andy Dogali
          Andy Dogali

Attorneys for Plaintiffs
Cari Shields and Amber Boggs and Class Plaintiffs

LA01/ 1099066.3

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTIONS RE. SETTLEMENT