David H. Raizman (SBN 129407)
david.raizman@dbr.com
James M. Altieri (Admitted *Pro Hac Vice*)
james.altieri@dbr.com
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1400
Los Angeles, California 90067-1517
Telephone:  (310) 203-4000
Facsimile:  (310) 229-1285

Attorneys for Defendants
Walt Disney Parks and Resorts U.S., Inc.
and Disney Online

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARI SHIELDS, AMBER BOGGS and TERESA STOCKTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WALT DISNEY PARKS AND RESORTS US, INC., DISNEY ONLINE, INC. and DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No.  CV10-5810-DMG (FMOx)<br><br>Class Action<br><br>**DECLARATION OF DAVID H. RAIZMAN IN SUPPORT OF JOINT MOTIONS FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, LEAVE TO FILE SECOND AMENDED COMPLAINT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASSES**<br><br>Date:  May 25, 2012<br>Time:  9:30 a.m.<br>Courtroom:  7<br>Judicial Officer:  Hon. Dolly M. Gee |

# DECLARATION OF DAVID H. RAIZMAN

I, David H. Raizman, declare as follows:

1. I am over the age of 18. I am a partner at Drinker Biddle & Reath LLP and lead counsel of record for defendants Walt Disney Parks and Resorts U.S., Inc., and Disney Online (collectively, "Disney") in this action. I have personal knowledge of the following facts and, if called as a witness, could testify competently to these facts.

2. I provide this declaration in support of the parties' motions for preliminary approval of the class action settlement, leave to file the Second Amended Complaint and conditional certification of four newly-identified settlement classes. On April 23, 2012, the parties agreed to the complete terms and conditions of the Class Action Settlement Agreement And Release, a true and correct copy of which is attached as Exhibit 1 to this declaration. As set forth below, this settlement is the product of protracted, arms-length negotiations in the course of a hard-fought litigation concerning difficult and at times novel issues.

3. Plaintiffs, on behalf of numerous national classes of individuals with visual disabilities, have made broad allegations of discrimination under federal and state law implicating virtually every aspect of Disney's six domestic theme parks and their related websites. Plaintiffs seek changes to the operations of six theme parks in two separate resorts visited by millions of visitors a year (the Disneyland Resort in California, including the Disneyland and Disney California Adventure ("DCA") theme parks, and the Walt Disney World Resort in Florida, including the Magic Kingdom, Epcot, Disney Hollywood Studios and Disney Animal Kingdom theme parks, (collectively referred to as the "Disney Parks")). They also seek wholesale changes to three heavily trafficked and continually-evolving websites, www.disneyworld.com, www.disneyland.com, and www.disneycruise.com (the "Disney Websites"), consisting of thousands of pages of material.

4. The parties have engaged in significant discovery. Each side has

consulted with their own experts on disability and website issues, and the results of those consultations shaped discovery demands and settlement negotiations. Named Plaintiffs were each deposed at least twice, and members of their families, friends and other persons with visual impairments were also deposed, as were numerous Disney employees involved in addressing concerns of individuals with visual disabilities visiting the Parks or utilizing Disney websites. Disney produced significant written discovery, and there were numerous disputes between the parties on scheduling and the scope of discovery.

5. The parties have also engaged in protracted hard bargaining. In April 2011, during the pendency of their February 2011 motion for class certification, Plaintiffs presented Disney with a sixteen-page demand letter taking aggressive settlement positions on behalf of all ten of the then-alleged classes. Discussion of those demands led to a realization that, at the time, there was no way to define relief as a unified whole, but also no way, given the degree of interrelation between certain claims and remedies, to resolve individual portions of the dispute while others proceeded to litigation.

6. In its June 29, 2011 decision on the class certification motion, the Court denied certification to five of the ten classes then alleged by plaintiffs (Maps, Characters, Audio Device, Lockers and Parking), as well as portions of a sixth (the free kennel and unattended tethering or crating claims of the Kennel Class). It also limited certification to claims under the (federal) Americans with Disabilities Act ("ADA"). Disney's vigorous and largely successful opposition to class certification, however, was met with equal vigor by Plaintiffs, who continued to advance claims as to which the Court had denied class certification and demanded that any settlement provide relief in those issues.

7. This perseverance by Plaintiffs has resulted in numerous instances in which the settlement provides relief beyond what Disney believes Plaintiffs could achieve through success on the merits. For example, the settlement provides

essentially all the relief sought on behalf of the Parking and Locker classes, even though these classes were not certified. Disney contends that ADA regulations are crystal clear that places of public accommodation are under no obligation to provide a place for guests with visual impairments to leave their animals unattended while they engage in certain activities, but the settlement provides for portable crates at attractions from which service animals are excluded for safety reasons, a key demand made on behalf of the uncertified portion of the Kennel Class. The regulations are similarly clear that it is sufficient for a place of public accommodation to read menus to guests with visual impairments, but the settlement provides for this information to be made available in Braille, *and* through being read upon request, *and* through call centers *and* through the www.disneyworld.com and www.disneyland.com websites *and* through Disney's Handheld Device. A similar degree of relief is provided to members of the Map Class despite that class not being certified and despite doubts that auxiliary aids such as portable and fixed Braille maps could be compelled under the ADA.

       8.    Resolving plaintiffs' website claims consumed more time and effort in settlement negotiations than any other issue. The problems were threefold. First, Disney does not agree that websites can be regulated under the ADA or California's Unruh or Disabled Persons Act statutes. Disney further contends that the Commerce Clause and comity issues between the judiciary and executive branch agencies that have expressly declined to mandate website accessibility also preclude judicial relief under these circumstances. Second, the parties' efforts to define what "accessible" means and how it should be achieved repeatedly ran into multiple levels of legal, technical and practical complexities. These are the same time, cost and functionality issues that have repeatedly led federal agencies to decline to adopt accessibility regulations and have impeded the federal government's ongoing, fourteen-year effort to make its own websites accessible. Third, the Disney Websites pose unique accessibility issues. Much of the content

consists of graphics, an inherent problem for individuals with visual disabilities, or is aural, which interferes with users' ability to hear spoken text read by screen-reading software. This content also frequently changes for commercial and artistic reasons, and is increasingly interactive rather than a static presentation of information. The commerce functions of purchasing tickets, passes, rooms, and packages by different levels of users (individuals, travel agents, and employees) for a cruise line and the six Disney Parks, in two different resorts, is also far more complex than a simple "click and buy," catalog-type website. Moreover, Disney is already engaged in a large, multi-year upgrade of its information system architecture, of which the Disney Websites are just one part. Indeed, while there are many issues as to which Disney has no conceptual objection to providing what Plaintiff want, it has practical objections to doing so pursuant to an externally-imposed schedule conflicting with other work in progress – particularly when Plaintiffs' right to any judicial relief is in doubt.

    9.    Following the Court's June 29, 2011 class certification order, the parties engaged in further settlement discussions. An August 10, 2011 mediation laid the foundation for a gradual evolution of settlement grounds through the fall of 2011. These grounds were reduced to a proposed term sheet in the early months of 2012, and in March the parties began the process of negotiating a formal Settlement Agreement and the mechanism for seeking approval of that settlement now being presented to the Court.

    I declare under penalty of perjury under the laws of the United States that the facts set forth above are true and accurate.

    Executed this 23rd day of April, 2011 at Los Angeles, California.

                                                    /s/ David H. Raizman
                                                  David H. Raizman