UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 10-05810 DMG (JEMx)** | Date | July 10, 2012 |
|---|---|---|---|
| Title | *Cari Shields, et al. v. Walt Disney Parks and Resorts US, Inc., et al.* | Page | 1 of 1 |

Present: The Honorable   **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| VALENCIA VALLERY | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER REQUIRING RESPONSE TO OBJECTIONS BY NATIONAL FEDERATION OF THE BLIND; NOTICE TO TERESA STOCKTON REGARDING JOINT MOTION FOR AN ORDER SUPPLEMENTING THE RECORD OF THE MAY 4, 2012 HEARING [Doc. # 224]**

The Court is in receipt of a letter dated July 6, 2012 from the National Federation of the Blind ("NFB"), attached hereto as Exhibit A, in which the NFB objects to the parties' proposed class action settlement. The parties shall file a joint response to the NFB's objections by no later than **July 20, 2012**.

On July 27, 2012 at 9:30 a.m., the Court will hear the parties' joint motion for an Order supplementing the record [Doc. # 224]. The parties seek to supplement the record so as to clarify certain statements that counsel made during the May 4, 2012 hearing on the parties' motion for preliminary settlement approval. If, in light of these clarifications, Teresa Stockton seeks to withdraw the voluntary dismissal of her claims with prejudice, she shall file notice to that effect on or before **July 20, 2012** and appear at the July 27, 2012 hearing. If Stockton intends to appear at the hearing telephonically, she shall notify the Court's deputy clerk at (213) 894-5452 at least three days before the hearing.

**IT IS SO ORDERED.**

# EXHIBIT A



**National Federation
of the Blind**

**Mehgan Sidhu, General Counsel**

200 East Wells Street
*at Jernigan Place*
Baltimore, MD 21230
**Phone** 410 659 9314  **Fax** 410 685 5653
www.nfb.org

SENT VIA FACSIMILE AND U.S. MAIL

July 6, 2012

Andy Dogali
Forizs & Dogali, P.A.
4301 Anchor Plaza Parkway
Suite 300
Tampa, Florida 33634
Fax: (813) 289-9435

Re: *Shields, et al. v. Disney, et al.*, Case No. 10-cv 5810 DMG. Objections of the National Federation of the Blind to Proposed Class Settlement and Notice to Appear at the Hearing

Dear Mr. Dogali,

    The National Federation of the Blind ("NFB"), on behalf of itself and its members, submit these objections to the proposed settlement agreement in *Shields, et al. v. Disney, et al.*, Case No. 10-cv-5810 DMG. The proposed *Disney* Class Settlement Agreement raises serious procedural and due process concerns and is fundamentally unfair to absent class members, many of whom are NFB members. The NFB therefore objects to its approval.

    With over 50,000 members, the NFB is the largest membership organization of blind people in the United States. It has affiliates in all fifty states, plus Washington, D.C., and Puerto Rico, and over 700 local chapters. The ultimate purpose of the NFB is the complete integration of the blind into society on an equal basis. To that end, the NFB engages in advocacy, education, research, technology, and programs that encourage the independence and self-confidence of people who are blind. Where necessary, the NFB pursues legal action to enforce the civil rights of the blind. Its litigation has resulted in class-wide settlements, including an agreement with the Target Corporation for its inaccessible website. *See National Federation of the Blind v. Target Corp.*, No. C-06-01802 MHP (N.D. Cal. Aug. 27, 2008).

Andy Dogali, Esq.
July 6, 2012
Page 2 of 5

The proposed *Disney* Class Settlement Agreement is substantially problematic and fundamentally unfair to members of the proposed classes. The release provisions are so overbroad they would preclude class members from forever bringing a disability-related claim against Disney. The release also reaches far beyond the scope of the claims under which the Complaint was brought, barring any disability discrimination claim under any law or regulation. Finally, the proposed settlement agreement dispenses with any damages to which class members are or may be entitled. For these reasons, as explained below, the NFB objects to the Court's approval of the Proposed Settlement.

**The Release Provision is Impermissibly Overbroad**

The release provisions in this agreement are so overbroad that the Court should, on this basis alone, reject the agreement. Under the collective reach of these provisions, class members waive any past, present, or future disability-related discrimination claims against Disney arising under federal, state, or local law that relate to Disney's parks or websites. *See Disney* Class Settlement Agreement, Section VI. Such an expansive release of *Disney* class members' claims is legally defective for several reasons.

First, release provisions in class settlement agreements that prospectively waive claims for future civil rights violations – whether arising under the ADA or other federal anti-discrimination laws – are highly disfavored since, contrary to public policy, a settling defendant otherwise would then be able to "purchase" a license to discriminate in the future. Here, the release provision expressly precludes class members from bringing any future claims for discrimination, stating: "This release is intended to bind all Settlement Classes and Class Members and *to preclude such Class Members from asserting or initiating future claims* with respect to the issues in this Action or the subject matter of this Settlement Agreement." (emphasis added) *Disney* Class Settlement Agreement, Section VI.

Second, the release provisions in the *Disney* agreement impermissibly extinguish the right of absent class members to seek redress under state or local anti-discrimination laws even though such claims plainly fall outside the scope of the Second Amended Complaint. In the Second Amended Complaint, as with their two prior complaints in this action, the named plaintiffs assert only ADA-based claims and claims under California state law. However, the proposed agreement's release encompasses "*any* state, local or federal statute, rule, or regulation, or common law" that affects the rights of individuals with disabilities to access or enjoyment of public places:

> This release includes but is not limited to any and all claims that have arisen or might have arisen that could have been asserted in the Action, including claims in violation of . . . any other state, local or federal statute, rule, or regulation, or common law that governs, addresses or affects the rights of individuals with disabilities to gain equal or full access to or

*( Voice of the Nation's Blind*

Andy Dogali, Esq.
July 6, 2012
Page 3 of 5

> enjoyment of places of public accommodation or places open to the public.
>
> *Disney* Class Settlement Agreement, Section VI.

Given the limited scope of this Complaint, well-established federal caselaw precludes the settling parties in *Disney* from compromising the claims of absent class members that arise out of other legal or factual predicates. *See, e.g., National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 (2nd Cir. 1981) ("If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action should not be able to do so either.").

Finally, under the broad sweep of the release provisions, were the *Disney* agreement endorsed by the Court, absent class members would waive their rights to seek available forms of relief under state or local law, including substantial monetary relief. The released claims include "all claims, counter-claims, liabilities, obligations, demands, and actions of any and every kind or nature whatsoever, known or unknown", that the Class Members may have against the Released Parties" related to Disney Parks or websites. *Disney* Class Settlement Agreement, Section VI. The release would therefore extinguish claims to state laws that provide monetary remedies for violations of disability or civil rights laws or regulations.[1]

---

[1] Indeed, because many states provide substantial monetary remedies for violations of state accessibility laws or regulations, some class members may find litigating their discrimination claims more advantageous under state law than under Title III the ADA where only equitable relief is available for private actions. *Compare, e.g.*, 42 U.S.C. § 12188(a) (remedies for private Title III actions) with Ark. Code. Ann. § 16-123-107 (2008) (intentional acts of disability discrimination liable for compensatory and punitive damages); Cal. Civ. Code §§ 52(a), 54.3(a) (2007) (permitting recovery of statutory, action, and treble damages for violations of state disability law); Colo. Rev. Stat. § 24-34-602(1) (2008) (violators of Colorado Anti-Discrimination Act liable for damages ranging from $50-500 per occurrence); Fla. Stat. Ann. §§ 760.07, 760.11(5) (West 2004) (disability discrimination by place of public accommodation gives rise to cause of action for "compensatory damages, including . . . mental anguish, loss of dignity, and any other intangible injuries, and punitive damages"); Lou. Rev. Stat. Ann. § 46:2256 (West 1999) (disabled individuals subjected to unlawful discrimination "shall have the right to any and all remedies under the law" including compensatory damages, attorneys' fees, and costs); Mass. Gen. Laws. ch. 272, § 98, ch. 151B, § 5 (West 2003) (authorizing damages for disability-based discrimination); N.Y. Exec. Law §§ 296, 297 (McKinney 2000) (authorizing damages for violations of public access law); Or. Rev. Stat. §§ 659A.142, 659A.885 (2008) (authorizing compensatory damages and punitive damages not to exceed $2,500 for unlawful discrimination by public accommodation); R.I. Gen. Laws §§ 42-87-2, 42-87-4 (1998) (permitting victims of disability discrimination to bring actions for equitable relief, compensatory and/or punitive damages, "or for any other relief that the court deems appropriate"); S.C. Code Ann. § 43-33-540 (1983) (civil damages not to exceed $5,000 available for disabled individuals subject to discrimination plus attorneys' fees and costs); Tex. Hum. Res. Code Ann. § 121.004(b) (Vernon 1995) (cause of action for disability-based discrimination with "conclusive presumption of damages in the amount of at least $100").

*( Voice of the Nation's Blind*

Andy Dogali, Esq.
July 6, 2012
Page 4 of 5

Although California state claims under which the Complaint was brought permit the recovery for damages, the proposed agreement provides no opportunity to class members to obtain monetary relief to which they may be entitled. Further, there is no opportunity to opt-out opportunity for class members who may have pending damage claims or want to bring their own statutory or damage claims. Meanwhile, Named Plaintiffs seek to recover $15,000 each from Disney in "service payments." *See Disney* Class Settlement Agreement, Section VIII. Ultimately, payments are provided to the Named Class Members only, while the remainder of the class is forever cut off in obtaining monetary relief to which they may be entitled. The release of class member's claims with no compensation or opportunity to opt out is patently unfair. *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart, Inc., Dukes*, 603 F.3d 571 (9th Cir. 2010) (citation omitted) ("Because the consent decree released almost all of the class member's claims with little or no compensation, the settlement agreement was unfair and did not adequately protect the interest of absent class members."). Given that no damages are being paid at to class members the lack of an opt out provision is thus not sufficiently protective, particularly in light of the overly broad scope of the release.

The procedural deficiencies underlying the *Disney* agreement's broad release provisions – particularly the release of all future state or federal disability discrimination actions without compensation to the class or an opportunity to opt out - counsel against judicial endorsement of this agreement. *See, e.g., National Super Spuds*, 660 F.2d at 18-19 (reversing district court's approval of class settlement agreement with over broad release provision that provided for uncompensated release of unliquidated potato futures contracts that were not encompassed within the class complaint concerning liquidated contracts); *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 299-301 (M.D. Pa. 1995) (rejecting class settlement requiring release of all class members' claims when only one-half of class received any direct economic benefit from agreement).

### The Settlement Should Be Rejected

Under Rule 23(e) the Court "acts as a fiduciary who must serve as a guardian of the rights of absent class members" and "cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (quoting *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S. Ct. 124, 46 L.Ed.2d 93 (1975).

For all of the reasons stated, the settlement is not fair, reasonable or adequate to the proposed classes, and should not be granted final approval.

( *Voice of the Nation's Blind*

Andy Dogali, Esq.
July 6, 2012
Page 5 of 5

**Notice to Appear**

The NFB respectfully notices its intent to appear at the hearing.

Sincerely,

*Mehgan Sidhu /S.S.*
Mehgan Sidhu, General Counsel
NATIONAL FEDERATION OF THE BLIND


cc:   The Honorable Dolly M. Gee

*( Voice of the Nation's Blind*