EUGENE FELDMAN, SBN 118497
genefeldman@mindspring.com
EUGENE FELDMAN, ATTORNEY AT LAW, APC
555 Pier Avenue, Suite 4
Hermosa Beach, California 90254
Phone: (310) 372 4636 / Fax: (310) 376 3531

and

ANDY DOGALI, *Pro Hac Vice*
adogali@forizs-dogali.com
FORIZS & DOGALI, P.A.
4301 Anchor Plaza Parkway, Suite 300
Tampa, FL 33634
Phone: (813) 289-0700/ Fax: (813) 289-9435
*ATTORNEYS FOR CARI SHIELDS,
AMBER BOGGS AND THE CLASSES*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| CARI SHIELDS, AMBER BOGGS and TERESA STOCKTON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WALT DISNEY PARKS AND RESORTS US, INC., DISNEY ONLINE, INC., and DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No.: No. 10-cv-5810-DMG(JEM)<br><br>**SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       January 25, 2013<br>Time:      9:30 a.m.<br>Courtroom: 7<br>Honorable Dolly M. Gee |

1

# SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

Anthony Anderson Benton Dogali, being duly sworn, deposes and says:

## I. INTRODUCTION

1. I am over the age of 18 years and of sound mind. I understand the obligations of an oath. I am competent to attest to all matters set forth in this Declaration. Except where expressly indicated, I have personal knowledge of the matters contained in this Declaration.

2. At all material times, I am and have been Class Counsel with respect to this class action originally brought against Disney Parks and Resorts US, Inc. and Disney Online, and presently brought by agreement against Disney Parks and Resorts US, Inc., Disney Online, and Walt Disney Parks and Resorts Online, along with Co-Counsel Eugene Feldman of Hermosa Beach, California.

3. I am a founding and senior attorney at the law firm of Forizs & Dogali, P.A.

4. I offer this Declaration in support of the parties' request for Final Approval of Class Action Settlement.

5. In late 2011 Plaintiffs and Defendants reached an agreement as to nearly all terms of a settlement of this class action lawsuit. Terms were refined and settlement documents drafted through the first quarter of 2012. On April 23, 2012, Plaintiffs and Defendants filed their proposed Class Action Settlement Agreement and Release (the "Settlement Agreement") with the Court and requested preliminary approval of same.

6. On May 4, 2012, this Honorable Court entered an Order Granting Preliminary Approval to Class Action Settlement (the "Order") (Dkt. 208) and set the final hearing on August 3, 2012 at 9:30 a.m. The Order approved a Notice for

2

SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT        CASE NO. 10-CV-5810-DMG (JEM)

service upon certain entities and Class Members.

7. Pursuant to the requirements of the Order, on May 17, 2012 and May 18, 2012, Class Counsel sent a copy of the Notice to all individuals known to Class Counsel to have a visual disability and to have expressed any concerns similar to those which Named Plaintiffs have alleged in this action regarding the Disney theme parks or websites. The Notice was sent via mail to those Class Members for whom a mailing address was known, and via email to those for whom only an email address was available. I have maintained a spreadsheet identifying all such persons and tracking our communications with them. The spreadsheet is available for review by the Court *in camera* or under seal, so as to avoid unnecessarily publishing the identity and contact information of disabled individuals.

8. On May 14, 2012, this Honorable Court issued its Order Approving Objection Submission Deadline and Modified Form of Class Notice (the "Notice"). (Dkt. 212).

9. Pursuant to the Notice, Class Counsel created and has maintained a reference and materials website relating to the settlement of this matter at www.shieldsADAsettlement.com and an email address for Class Member communications at Disney.Settlement@forizs-dogali.com for comments and questions regarding the settlement, and has monitored and reviewed communications to that email address.

10. On June 25, 2012, Class Counsel received an email from one Class Member requesting an audio voice recording of the Settlement Agreement and Notice to accommodate his disability, in that he advised that he has difficulty listening to synthetic speech.

11. The requested recording of a verbatim reading of the Settlement Agreement was produced by Class Counsel, and on July 2, 2012 both of two (2) microcassettes and one (1) CD in media player format were sent to the Class Member via Federal Express.

3

SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT                    CASE NO. 10-CV-5810-DMG (JEM)

12. The audio recordings were posted on the website for the general availability of all Class Members.

13. I personally determined the criteria to be followed and the media to be used in creating the audio recordings, and personally supervised their creation.

14. The Court's Order required any objections to "be postmarked no later than July 6, 2012." From the time the Notice was served to the date of this Declaration, no Class Member has ever objected as provided in the Court's Order, by proper mail or by any other means. Nor has any Class Member contacted Class Counsel at any time in an attempt to object, or seeking information about doing so, or in an attempt to opt out, or seeking information about doing so, or expressing concern that he or she was given no opportunity to object or opt out.[1]

15. From the time the Notice was served to the date of this Declaration, I have heard no objections or concerns from any of the Attorneys General or other authorities to which CAFA notice was given by the Defendants.

16. Prior to filing suit, and through the two years the lawsuit was pending prior to the public announcement of the parties' original Settlement Agreement, I performed a diligent investigation and took substantial discovery regarding past Class Member complaints which have been made against Disney, either formally or informally, in relation to Disney's accommodation of blind persons' accessibility needs. I uncovered no case in which a blind person has ever sued Disney, in any jurisdiction, raising such a claim.

17. To my knowledge, this absence of lawsuits has continued, even after the parties' Settlement Agreement was publicly announced and noticed. For the

---

[1] One person contacted me with an inquiry apparently about making a "claim" within the settlement. The person's identity is not clear, and it could not be confirmed that this person actually has a potential claim, or that the person is a member of any of the Settlement Classes. Strangely, the skeletal and cryptic communication arrived on December 10, 2012, more than five months after the time expired for submitting objections, *on the very same day* that I received NFB's most recent filing regarding due process cases.

4

entire 2.7-year period during which the lawsuit has been pending, encompassing the time prior to public notice of the settlement, the period during which Class Members could have objected and did not, and the additional seven (7) months which has passed since the notice period expired, the litigation has been well-publicized and is otherwise well-known in the blind community and among class action practitioners. Throughout the pendency of the case, anyone could have come forward and filed his or her own lawsuit against Disney. It would have been a very simple matter for anyone to use Plaintiffs' complaint to file a "copycat" lawsuit against Disney, especially after the Court entered its Certification Order. Nobody has done so, in any state.

18.   To my knowledge, following our investigation and discovery, of the persons who have ever made even an informal complaint regarding Disney's accommodations for visually-impaired persons, a miniscule number (and possibly zero), might currently possess a statutory minimum damage claim that would not be barred by the statute of limitations.

19.   As mentioned above, *zero* Class Members objected to the settlement. When evaluating a class action settlement, the law places great weight on a low number of objections.[2] It is not possible to receive fewer objections than *zero*. Any Class Member could have objected to any aspect of the settlement agreement,

---

[2] The Ninth Circuit has ruled on a number of occasions that the number of objections to a class action settlement is a critical factor to be evaluated in determining whether to approve the settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004); *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). Throughout the Ninth Circuit, many recent district court decisions have determined that a sparse number of objections is strong support for approval of a class action settlement. *See, e.g.*, *Odrick v. Unionbancal Corp.*, 2012 WL 6019495, at 5 (N.D. Cal. Dec. 3, 2012); *Shames v. Hertz Corp.*, 2012 WL 5392159, at 7-8 (S.D. Cal. Nov. 5, 2012); *Ko v. Natura Pet Products, Inc.*, 2012 WL 3945541, at 5 (N.D. Cal. Sept. 10, 2012); *In re TD Ameritrade Account Holder Litigation*, 2011 WL 4079226, at 7 (N.D. Cal. 2011); *Martin v. Ameripride Services, Inc.*, 2011 WL 2313604, at 7 (S.D. Cal. 2011); *Wietzke v. Costar Realty Information, Inc.*, 2011 WL 817438, at 5-6 (S.D. Cal. 2011).

5

SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT                    CASE NO. 10-CV-5810-DMG (JEM)

including to having not been given a right to opt out. None did so.[3]

20. It appears that a small minority of the states have enacted statutes which statutorily prescribe specific or minimum recoverable money damages. More than forty states (40) have not done so. The claims of persons who would otherwise bring claims under the laws of the large majority of states are not affected by this release; those persons would never have had, and do not have, any logical reason to opt out, and there exists no logical reason to give them one.

21. Even those persons who might bring claims under the laws of the exceptional states are still able to file suit to seek actual damages, and do not need to opt out to do so. Further, those persons know or should know that if an opportunity to opt out were given to them, exercising the right would jeopardize the injunctive relief that they and all blind persons will receive under the settlement, in that an agreement or order to re-notice the current settlement would likely carry a (customarily confidential) number of opt-outs which would make the deal intolerable to the defendant. As is customarily the case, any single opt-out would create incremental instability toward approval of the Class Action Settlement.

22. The notice which was disseminated pursuant to the Court's Order of

---

[3] NFB and ACB are not class members, and thus are not objectors. The Court properly previously determined those associations to be, at most, *amici*. In a recent filing received by the undersigned on December 10, entitled Response of Objectors to Parties' Joint Statement Regarding Cases Cited at October 12, 2012 Hearing, two individuals apparently purport to join in the NFB "objection," Ever Lee Hairston and Rochelle Houston. Neither individual has ever submitted an objection. This was their first and only filing of any kind, inexplicably more than five (5) months after the objection deadline passed. Neither has ever provided even rudimentary information to allow the Court to evaluate an "objection," such as whether they are Class members in the first instance, or whether either of them has ever visited a Disney theme park or website and experienced a discrimination event. (Absent an actual past experience which might give rise to a claim under a particular state statute, no Class member has anything to protect by opting out and should not be heard to complain of an inability to do so.) At most, Ms. Hairston and Ms. Houston are *amici* or, more aptly, *amici* of an *amicus*. The other *amicus*, ACB, has never availed itself of the opportunity to appear before the Court.

6

SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT                    CASE NO. 10-CV-5810-DMG (JEM)

1  Preliminary Approval was very clear and was offered in multiple accessible
2  formats. The Class Members received a clear opportunity to object, and a clear
3  deadline for doing so. Like anyone else, they were free to consult their own
4  attorney to review the notice. Those who contacted my office for information were
5  given the information and assistance they requested.

6    23.  It is quite probable that many Class Members, and perhaps the large
7  majority:

8    a.  Do not reside in southern California or central Florida and are
9  much less likely to have frequented the theme parks on multiple occasions.
10 Consequently, few of the Class Members buy annual passes to allow for frequent
11 visits to the parks. Most Class Members are not lucky enough to repeatedly visit
12 the parks but do so only once or a few occasions in their lifetimes, because it is a
13 huge vacation investment. Those Class Members likely visited the parks with their
14 families and had fine experiences in the parks which would not lead them to want
15 to sue Disney anyway.

16    b.  Are fans of Disney and, even if they once experienced
17 accessibility problems at the parks, would not consider filing suit over it;

18    c.  Have, over the years, reviewed complimentary articles
19 published by NFB and ACB and others about Disney, including about Disney's
20 sponsorship of events for blind persons. Without regard for the accuracy of those
21 reports, many Class Members likely deemed them credible.

22    24.  My examination of all available information leads me to the
23 conclusion that even if the first notice in May of 2012 had included an opt-out
24 right, nobody would have exercised that right. Even if one or two Class Members
25 had done so, my fiduciary duty to the entire Class leads me to try to preserve the
26 settlement for the entire Class rather than nullify it for the benefit of one or two
27 persons who may, purely in the abstract, ever do anything about the right I would
28 be conceptually preserving for them. I am convinced that now giving Class

7

SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT            CASE NO. 10-CV-5810-DMG (JEM)

1  Members a right to opt out would be a futile gesture, especially since we already
2  gave them a right to object and nobody did so, and even as time has continued to
3  pass, no Class Member has expressed any concern about a deprivation of this right.

4      25.    I have reviewed this matter with the Class Representatives to a nearly
5  indescribable extent and in an excruciating level of detail.  They, like me, believe
6  that raising due process objections to the current settlement would elevate
7  procedure over substance, in that no Class Members would opt out anyway.
8  Looking retrospectively, while we may believe that the prior notice of May 2012
9  should have included an opt-out right, this observation is at best an academic one,
10 and the omission of the opt-out right was harmless, because such a notice would
11 never have gone out in the first place, as it appears there would never have been a
12 settlement calling for an opt-out notice because Disney did not agree to one in the
13 first instance.  Similarly, looking prospectively at a notice which might go out in
14 the future so as to provide an opt-out right is likewise a purely academic exercise,
15 as it appears there will never be such a notice because there is no settlement which
16 calls for one.  Even so, our retrospective look at the first notice, along with the
17 other unique and peculiar facts which exist here, compels the conclusion that a
18 prospective notice which might include an opt-out right, if one were served, would
19 be a futile gesture.

20     26.    I declare under penalty of perjury, under the laws of the United States
21 of America, the State of Florida, and the State of California, that the foregoing is
22 true and correct.

23     Dated this 21st day of January, 2013.

                    /s/ Andy Dogali
                    Andy Dogali

SUPPLEMENTAL DECLARATION OF ANDY DOGALI IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT                    CASE NO. 10-CV-5810-DMG (JEM)